# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 29, 2012

No. 11-31046

Lyle W. Cayce
Clerk

In the Matter of: BENJAMIN RAGOS; STELLA CANNON RAGOS,

Debtors

---------------------------------------------------------------------------

S.J. BEAULIEU, JR.,

Appellant

v.

BENJAMIN RAGOS and STELLA CANNON RAGOS,

Appellees

Appeal from the United States Bankruptcy Court
for the Eastern District of Louisiana

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Chapter 13 of the Bankruptcy Code provides bankruptcy protection to individuals with regular income whose debts fall within statutory limits. Unlike bankruptcy debtors who file under Chapter 7 and must liquidate their assets, Chapter 13 debtors are permitted to keep their property subject to a court-approved plan under which they agree to pay creditors out of their future income. This appeal presents the question of whether social security benefits are

No. 11-31046

included in a debtor's projected disposable income in the formulation of a Chapter 13 plan and the calculation of the future payments the debtor will be required to make to creditors. Because we find that social security benefits are not included in the projected disposable income calculation, we AFFIRM the bankruptcy court's order.

## I.

Benjamin and Stella Ragos ("Debtors") voluntarily filed a joint Chapter 13 bankruptcy petition on February 22, 2011. On schedule I (Current Income of Individual Debtors), Debtors itemized their monthly income, including a $200.00 portion of their monthly social security benefits. Debtors' actual monthly receipt of social security benefits totals $1,854.00. Pursuant to a Chapter 13 reorganization, the Debtors filed a proposed payment plan. Under the terms of the plan, creditors would receive all of Debtors' declared monthly net income. However, the Debtors would retain the undeclared balance of their social security benefits, $1,654.00 each month.

S.J. Beaulieu, Jr., the Chapter 13 Trustee ("Trustee"), objected to confirmation of the Debtors' plan because Debtors did not dedicate 100% of their social security income to the plan for payment to creditors. Trustee additionally argued that Debtors' willful failure to commit their social security income to the repayment of creditors indicated that their plan had not been proposed in good faith. After a hearing, the bankruptcy judge rejected both of Trustee's arguments. The bankruptcy court based its ruling primarily on the language of provisions of both the Bankruptcy Code and the Social Security Act, reflecting a congressional intent to exclude social security benefits in calculating projected disposable income. The bankruptcy court's order was certified for appeal under 28 U.S.C. § 158(d)(2) and we granted the motion for appeal of the order to this Court.

No. 11-31046

## II.

We review a bankruptcy court's conclusions of law *de novo* and we review its findings of facts for clear error. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (en banc). The bankruptcy court's interpretation of a provision of the Bankruptcy Code is a clear-cut question of law. However, "A bankruptcy court's determination that a debtor has [or has not] acted in bad faith is a finding of fact reviewed for clear error." *In re Jacobsen*, 609 F.3d 647, 652 (5th Cir. 2010). We will sustain that court's factual findings absent "a firm and definite conviction that the bankruptcy court made a mistake." *In re Cahill*, 428 F.3d 536, 542 (5th Cir. 2005) (citation omitted) (internal quotation marks omitted) .

## III.

## A.

Trustee argues first that the bankruptcy court erred by allowing Debtors to exclude their social security benefits from the Debtors' projected disposable income dedicated to the payment of creditors.

Bankruptcy Code § 1325(a) lists the conditions under which the court shall confirm a Chapter 13 debtor's payment plan, the essential requirement being that it guarantee creditors at least as much payment as they would receive through the debtor's liquidation. *See* 11 U.S.C. § 1325 (2006). Although Debtors' plan complies with § 1325(a), Trustee nonetheless relies upon a separate provision of the Bankruptcy Code to challenge the plan. Trustee bases his objection upon § 1325(b)(1)(B), which states:

> If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> . . . .
> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.

No. 11-31046

*Id.* (emphasis added). According to Trustee, the bankruptcy court should not have approved the plan because it allows Debtors to withhold social security benefits. This appeal thus asks us to decide whether a Chapter 13 debtor's social security income must be included in "projected disposable income."

The Trustee contends that the term "all of the debtor's projected disposable income" includes *all* sources of income and does not exclude social security benefits. Under this view, because Debtors are receiving social security benefits which they are keeping for themselves, they are withholding a portion of their projected disposable income and "the court may not approve the plan." *Id.*

Although projected disposable income is not defined *per se*, we are guided in this inquiry by two statutes. The first statute relevant here is the Bankruptcy Code itself. Though "projected disposable income" is not defined in § 1325(b)(1), the term "disposable income" is defined in the statute's very next provision: "[T]he term 'disposable income' means *current monthly income* received by the debtor . . . less amounts reasonably necessary" for certain enumerated expenses. *Id.* § 1325(b)(2) (emphasis added). "Current monthly income," in turn, is elsewhere defined as the average of "all sources" of the debtor's monthly income during the previous six-month period. *See id.* § 101(10A)(A). Importantly, the statutory definition of "current monthly income" explicitly "excludes benefits received under the Social Security Act." *Id.* § 101(10A)(B).[1] Trustee's argument thus rests on the uncertain premise that although social security benefits are not included in "current monthly income," which is the starting point for

---

[1] The term 'current monthly income'–

. . . .

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act[]

. . . .

*Id.*

determining "disposable income," "projected disposable income" should nonetheless include a debtor's social security income.

We cannot square Trustee's argument with the apparent intent of Congress. If Congress excluded social security income from current monthly income and disposable income, it makes little sense to circumvent that prohibition by allowing social security income to be included in *projected* disposable income. *See Hamilton v. Lanning*, 130 S. Ct. 2464, 2474 (2010) ("[H]ad Congress intended for 'projected' to carry a specialized—and indeed, unusual—meaning in Chapter 13, Congress would have said so expressly."). Nothing in the Bankruptcy Code suggests that bankruptcy courts may ignore the statutory definition of disposable income in this manner. *See Baud v. Carroll*, 634 F.3d 327, 346 (6th Cir. 2011).

The conclusion that Congress exempted social security benefits from projected disposable income is also bolstered by two independently enacted provisions of the Social Security Act. The first provision, Social Security Act § 407(a), was enacted in 1935, long before the enactment of the Bankruptcy Code. That section provides:

> (a) . . . [N]one of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or *to the operation of any bankruptcy or insolvency law.*

42 U.S.C. § 407(a) (emphasis added). Section 407(a) thus makes it clear that social security benefits such as the Debtors' are not subject to the operation of *any* bankruptcy law. Despite this explicit statutory language, some courts however failed to read the § 407(a) as exempting social security benefits from income available to pay creditors in Chapter 13 bankruptcy proceedings. According to a 1983 House Conference Report,

> Based on the legislative history of the Bankruptcy Reform Act of 1978, some bankruptcy courts ha[d] considered social security and

No. 11-31046

[Social Security Income] benefits listed by the debtor to be income for purposes of a Chapter XIII bankruptcy.[2]

The 1983 House Committee then made clear its intent to legislatively overrule these cases and protect social security benefits by enacting a second provision in § 407(b) of the Social Security Act, which states:

> No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407(b). According to the modified statute, even laws enacted after § 407 was enacted must expressly cite to § 407 if they wish to overcome social security income's exemption from the operation of any bankruptcy law. *Id.* These two independently enacted provisions of the Social Security Act, read together with the Bankruptcy Code, express the clear intent of Congress to protect Social Security payments from bankruptcy process.

The decisions of our sister circuits support this conclusion. In *Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011), the Sixth Circuit considered a claim made by a Michigan trustee under similar circumstances. The *Baud* trustee was also trying to convince the court to recognize social security benefits as projected disposable income. *See id.* at 330. The Sixth Circuit relied upon the clear exclusion of social security benefits from the Bankruptcy Code's definition of "current monthly income" to reject the Trustee's claim: "Were we to follow the approach espoused by the Appellant, bankruptcy courts—. . . contrary to the express statutory language—would be permitted to depart from the definition of disposable income set forth in § 1325(b)(2) in virtually every case." *Id.* at 347.

The Eighth Circuit also considered a similar argument in *In re Carpenter*, 614 F.3d 930 (8th Cir. 2010). The debtor in *Carpenter* received a significant lump

---

[2] H.R. REP. NO. 98-25, pt. 1, (1983), *reprinted in* 1983 U.S.C.C.A.N. 219, 302.

No. 11-31046

sum social security payment just before filing for bankruptcy. *Id*. at 931. The trustee argued that the lump sum payment was part of the bankruptcy estate. *Id*. The court rejected this argument, relying on the clear language of the Social Security Act § 407's prohibition: "[Section] 407 does not contain any qualifying language. It explicitly demands that no past or future social security payments may be subject to the operation of any bankruptcy law." *Id*. at 936.

In response, Trustee argues that the Supreme Court's recent decision in *Hamilton v. Lanning* requires a different result. 130 S. Ct. 2464 (2010). Just before her bankruptcy, the debtor in *Lanning* had received a one-time cash buyout from her employer. *Id*. at 2470. Although all sources of income within the six months prior to bankruptcy are included in disposable income, to include the effects of the one-time buyout in her projected disposable income would have grossly misrepresented her likely future income, obligating her to make payments she would not be able to afford. *See* 11 U.S.C. § 101(10A)(A); *Lanning*, 130 S. Ct. at 2470. In light of this inequity, the Court addressed whether projected disposable income could ever deviate from the statutorily-defined disposable income figure. *Lanning*, 130 S. Ct. at 2469–71. The *Lanning* trustee argued that projected disposable income was always identical to disposable income, while the debtor argued that the figures could differ in certain circumstances. *See id*. at 2471. The Court held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id*. at 2478. However, the Court emphasized that the two figures will normally be the same, stating that a court "should begin by calculating disposable income, and in most cases, nothing more is required. *Id*. at 2475. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." *Id*. According to Trustee, the Debtors' future social security

benefits are precisely the kind of "known or virtually certain information about the debtor's future income" contemplated by the Court in *Lanning*. *See id*.

Trustee is correct that Debtors' social security benefit payments are amounts certain to recur in the future and this fact is known to the debtors. However, the facts before the *Lanning* Court and the issue those facts raised are completely different from the issue in this case. Because of a material change of circumstances, Lanning's current income was not a reliable predictor of her future income. *Id*. at 2470. Thus, her future income (projected disposable income) was "virtually certain" to be different from her current income. *Id*. The *Lanning* Court simply recognized that in calculating projected disposable income, a court should consider and account for future changes in the income stream that are known or virtually certain to occur. *See id*. at 2471–72, 2478 ("[W]e hold that . . . the court may account for changes in the debtor's income or expenses that are known or virtually certain."). Here, however, there has been no change in the Debtors' circumstances or in any income stream. Trustee simply seeks to circumvent the exemption granted to social security income by accounting for it in the future income (projected disposable income) calculation. However, the mere existence of a statutorily exempt income stream the debtor has been receiving for some time is not a change in circumstances, and *Lanning* does not undermine our analysis.

We said as much in *In re Nowlin*, where "we h[e]ld that a debtor's 'disposable income' . . . is presumptively the debtor's 'projected disposable income' under § 1325(b)(1)(B), but that any party may rebut this presumption by presenting evidence of present or reasonably certain future events that *substantially change* the debtor's financial situation." 576 F.3d 258, 266 (5th Cir. 2009) (emphasis added).[3] Because Trustee has not presented any evidence of a

---

[3] *See also Baud v. Carroll*, 634 F.3d at 345; *Cranmer v. Anderson*, 463 B.R. 548, 553–54 (D. Utah 2011).

substantial change in the Debtors' financial situation or income, disposable income is equivalent to projected disposable income.

Trustee alternatively points to another sentence in *Lanning* as supporting his argument. Specifically, the Trustee argues that the *Lanning* Court implicitly endorsed jurisprudence which held social security benefits subject to bankruptcy process despite the admonition not to do so in § 407. *Lanning* states that when considering bankruptcy issues, prior "bankruptcy practice is telling because we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." 130 S. Ct. at 2473 (internal quotation marks omitted). Trustee points out that some bankruptcy courts in Chapter 13 cases have historically included social security benefits in their calculations of projected disposable income.[4]

The problem with Trustee's argument based on this sentence in *Lanning* is that it completely ignores the final clause in the sentence, "absent a clear indication that Congress intended such a departure." *Id.* As explained above, Congress made such a clear indication in 2005 when it passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which amended the Bankruptcy Code in many respects. Part of the BAPCPA's revision included the modification of the definition of "current monthly income" in 11 U.S.C. § 101(10A)(A)—the starting point for projected disposable income—to explicitly exclude social security benefits. We consider this a "clear indication that Congress intended . . . a departure" from the practice of including social security benefits in projected disposable income. *See id.*; *Lanning*, 130 S. Ct. at 2473. As the Sixth Circuit recognized in *Baud*, "Permitting the bankruptcy court—as the Appellant would have us do—to include Social Security benefits in the calculation of the Appellees' projected disposable income essentially would read

---

[4] *See, e.g.*, *In re Cornelius*, 195 B.R. 831, 835 (Bankr. N.D.N.Y. 1995); *In re Schnabel*, 153 B.R. 809, 815–18 (Bankr. N.D. Ill. 1993).

No. 11-31046

out of the Code BAPCPA's revisions to the definition of disposable income." 634 F.3d at 345.

Lastly, Trustee alternatively argues that the fact that Debtors' disposable income is negative[5] constitutes a "special circumstance" which permits complete abandonment of the disposable income figure for purposes of establishing projected disposable income. However, nothing in the Bankruptcy Code or *Lanning* suggests that a negative disposable income is a relevant event that warrants a complete rejection of the figure's use. Moreover, it makes little sense to create an exception which permits deviations for projected disposable income only in those cases in which disposable income is negative. To the contrary, debtors with negative disposable income will be the least able to afford additional payments. Here, the Trustee and creditors have not objected to the calculation of the income and expenses which resulted in a negative disposable income. As a result, Trustee may not later assert that Debtors' low disposable income is a basis for seeking greater payments.

Because including social security income in projected disposable income would violate both the Bankruptcy Code and the Social Security Act, we hold that social security benefits are not included in a debtor's projected disposable income.

B.

Trustee also argues that the bankruptcy court erred in finding that the Debtors' payment plan was proposed and filed in good faith. As stated in 11 U.S.C. § 1325(a), a debtor's plan shall be confirmed if "the plan has been proposed in good faith" and "the action of the debtor in filing the petition was in good faith." Trustee rests his argument on the fact that "debtors have not

---

[5] Here, negative disposable income means that the Debtors' qualifying expenses and deductions ($6,717.62) exceed their income ($5,481.78), leaving the Debtors with a disposable income of -$1,235.84 per month.

No. 11-31046

committed all available income, including their [social] security income, to pay their unsecured creditors." Specifically, Trustee contends that "Debtors' retention of almost 90% of their Social Security benefits over the term of a 60 month plan, while paying their unsecured creditors only 38% of their claims, reflects a lack of good faith in the filing and proposing of their plan."

Contrary to the assertions of the Trustee, there is no evidence that the Debtors have acted in bad faith or seek any improper result. Having already concluded that Debtors' plan fully complied with the Bankruptcy Code, it is apparent that Debtors are not in bad faith merely for doing what the Code permits them to do. We thus hold that retention of exempt social security benefits alone is legally insufficient to support a finding of bad faith under the Bankruptcy Code.

## IV.

For the reasons stated above, the order of the bankruptcy court is AFFIRMED.