Vacated and remanded by published opinion. Judge GREGORY wrote the majority opinion, in which Judge AGEE joined. Senior Judge FABER wrote a dissenting opinion.
GREGORY, Circuit Judge:
Robert D. Mort Ranta filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301-1330, seeking to adjust various secured and unsecured debts. The bankruptcy court denied confirmation of his proposed Chapter 13 plan on the grounds that it did not accurately reflect his disposable income and that it was unfeasible if Mort Ranta’s Social Security income was excluded from his “projected disposable income,” as Mort Ranta urged.[1] The district court affirmed. We hold that the plain language of the Bankruptcy Code excludes Social Security income from the calculation of “projected disposable income,” but that such income nevertheless must be considered in the evaluation of a plan’s feasibility. For these reasons, we vacate and remand to the district court with instructions to remand the case to the bankruptcy court for further proceedings consistent with this opinion.
I.
At the time he filed the Chapter 13 petition, Mort Ranta owed $20,000 in arrears on his home mortgage loan, $12,981 in individual credit card debt, and $8,295 in joint credit card debt with his wife. On Form B22 (C), Mort Ranta reported a “current monthly income” of $3,097.46, a figure derived from the couple’s combined average monthly income from employment over the previous six months.
On Form B6I (“Schedule I”), however, Mort Ranta reported his “combined average monthly income” as $7,492.10. That figure reflected the couple’s current monthly take-home pay from employment, plus an additional $3,319 in combined monthly Social Security benefits. His monthly expenses were reported on Form B6J (“Schedule J”) as $6,967.24. Subtracting that figure from his “combined average monthly income,” his “monthly net income” per Schedule J was $524.86.
Mort Ranta proposed a plan requiring payments of $525 per month for five years, *244 for a total of $31,500. From that amount, the plan would pay off in full his mortgage arrears and joint credit card debt. However, his individual credit card debt would be paid off at less than one percent.[2]
The Trustee objected to the plan, claiming that it failed to dedicate Mort Ranta’s full “projected disposable income” to creditors as required by 11 U.S.C. § 1325(b)(1)(B).[3] Specifically, the Trustee contended that the expenses listed on Schedule J were overstated and that Mort Ranta’s disposable income therefore was higher than it appeared to be.
In a hearing before the bankruptcy court, Mort Ranta conceded that some of his expenses were overstated, but argued that his plan nevertheless complied with § 1325(b)(1)(B) because Social Security income is excluded from the calculation of “disposable income.” Thus, even after adjusting his expenses downward, he argued that his disposable income would be negative because his expenses would still exceed his non-Social Security income. As a result, Mort Ranta contended he was not required to make any payments to unsecured creditors under § 1325(b)(1)(B).
In a colloquy with the parties, the bankruptcy court determined that if Mort Ran-ta’s monthly payments were increased to reflect his actual net income, including Social Security, the total payments under the plan would be approximately $50,000. That amount would allow for full repayment of all debts, including the individual credit card debt that would be paid off at less than one percent under Mort Ranta’s proposed plan. Thus, the Trustee noted, the holder of that unsecured debt would either “get paid pretty much in full like everybody else or [under Mort Ranta’s proposed plan] they get nothing.”
The bankruptcy court agreed with the Trustee that Mort Ranta “[could] afford something greater [than what he proposed to pay] because there’s ... income from Social Security.” The court then found that Mort Ranta’s plan was not feasible, explaining:
If you don’t want to count Social Security for the purposes of the income then I think you have to go back to the rule of law of disposable income. If you’re not going to add it to income you’re not going to have feasibility for the plan. It’s not feasible.
At this point, Mort Ranta asked the court to grant an interlocutory appeal, and the court denied his request. The court subsequently issued a written order denying confirmation of the plan and ordering the case dismissed in 21 days unless Mort Ranta took one of the actions enumerated in Rule 3015-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court of the Eastern District of Virginia.[4]
Mort Ranta appealed to the United States District Court for the Eastern District of Virginia. In a motion for leave to appeal, Mort Ranta noted that “the majority rule is that denial of confirmation is interlocutory,” but preserved his position *245 that the denial should be considered a final order for purposes of appeal. The Trustee opposed the motion, arguing that the appeal did not meet the criteria for interlocutory appeal under 28 U.S.C. § 158(a)(3).
Without addressing the basis for its jurisdiction or the motion for leave to file, the district court affirmed the bankruptcy court’s denial of confirmation in a written order. The court reasoned:
In this case, the Bankruptcy Court appropriately found that the Debtor could afford to pay an amount greater than that proposed in his Chapter 13 plan. Neither the Bankruptcy Code nor the Social Security Act prohibits a bankruptcy court from determining a debt- or’s ability to repay his or her creditors, and in this case part of that consideration included Debtor’s supplemental Social Security retirement benefits. Because Debtor voluntary [sic] chose not to include Social Security benefits for purposes of income in this particular case, the Bankruptcy Court found that Debt- or’s proposed Chapter 13 Plan was not feasible.... [T]hese findings of the Bankruptcy Court are neither erroneous nor contrary to law....
Ranta v. Gorman, No. 1:12-CV-505 at 2 (E.D.V.A. August 6, 2012). Mort Ranta timely appealed.
On appeal, Mort Ranta asks us to reverse the district court’s order affirming the bankruptcy court’s denial of confirmation, thereby overruling the Trustee’s objection to confirmation. He argues first that the Bankruptcy Code expressly excludes Social Security income from the calculation of projected disposable income; and second, that his plan is feasible based on his Social Security income. Before turning to the merits of his appeal, first we must satisfy ourselves of our appellate jurisdiction over the case.
II.
Mort Ranta asserts appellate jurisdiction under 28 U.S.C. § 158(d)(1), which grants the courts of appeal jurisdiction over appeals from “all final decisions, judgments, orders, and decrees” entered by the district court sitting in review of the bankruptcy court.[5] Both the district court order and the bankruptcy court order must be final for our jurisdiction to be proper under § 158(d)(1). See In re Computer Learning Ctrs., Inc., 407 F.3d 656, 660 (4th Cir.2005).
When a bankruptcy debtor’s proposed plan is confirmed, we have generally allowed creditors and trustees whose objections to the plan were overruled to appeal as a matter of right. See, e.g., In re Quigley, 673 F.3d 269, 270 (4th Cir.2012) (trustee’s appeal from district court’s affir-mance of bankruptcy court order overruling in part trustee’s objection to proposed plan); Neufeld v. Freeman, 794 F.2d 149, 150 (4th Cir.1986) (creditor’s appeal from district court’s affirmance of bankruptcy court’s confirmation of proposed plan).
By the same token, we have a long history of allowing appeals from debtors whose proposed plans are denied confirmation, without questioning the finality of the underlying order. See, e.g., In re Coleman, 426 F.3d 719, 722, 727 (4th Cir.2005) (appeal from bankruptcy court order, affirmed by district court, withdrawing confirmation of debtor’s plan and granting debtor 30 days to file an amended plan); In re Witt, 113 F.3d 508, 509, 513 (4th Cir.1997) (appeal from district court order *246 reversing bankruptcy court’s confirmation of plan and remanding to allow debtor to propose amended plan); In re Solomon, 67 F.3d 1128, 1130-31 (4th Cir.1995) (appeal from bankruptcy court order, affirmed by district court, denying confirmation of plan); Caswell v. Lang, 757 F.2d 608, 608 (4th Cir.1985) (same); Deans v. O’Donnell, 692 F.2d 968, 968 (4th Cir.1982) (same).[6]
However, as described below, the finality of an order denying confirmation of a proposed plan but not dismissing the underlying bankruptcy petition is an issue that has divided other circuits. On one side, four circuits have held that such orders are strictly interlocutory, while two other circuits have held that they can be final for purposes of appeal. See infra pp. 246-48. Given this circuit split, and the fact that we have not squarely addressed this issue before, we asked the parties to file supplemental briefs addressing the basis for our appellate jurisdiction. After considering the principles of finality unique to bankruptcy cases and the decisions of other circuits, we conclude that the bankruptcy court’s denial of Mort Ran-ta’s proposed plan and the district court’s affirmance are final orders for purposes of appeal, and that our appellate jurisdiction is proper.
As we have recognized on many occasions, the concept of finality in bankruptcy traditionally has been applied in a “more pragmatic and less technical way” than in other situations. McDow v. Dudley, 662 F.3d 284, 287 (4th Cir.2011) (quoting Computer Learning Ctrs., 407 F.3d at 660). The reason for this “relaxed rule of appealability” is that bankruptcy proceedings are often protracted, involving multiple parties, claims, and procedures, and postponing review of discrete portions of the action until after a plan of reorganization is approved could result in the waste of valuable time and scarce resources. McDow, 662 F.3d at 287 (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1009 (4th Cir.1986)). Thus, in bankruptcy cases, we allow immediate appellate review of orders that “finally dispose of discrete disputes within the larger case.” Id. at 287 (quoting Computer Learning Ctrs., 407 F.3d at 660).[7]
Applying these principles, we have held final and appealable a variety of orders that resolve a specific dispute within the larger case without dismissing the entire action or resolving all other issues. See, e.g., McDow, 662 F.3d at 286-90 (denial of trustee’s motion to dismiss bankruptcy case as abusive); Comm. of Dalkon Shield Claimants v. AH. Robins Co., Inc., 828 F.2d 239, 241 (4th Cir.1987) (denial of request by claimants for appointment of trustee); Piccinin, 788 F.2d at 1009 (order fixing venue).
By contrast, we have held interlocutory bankruptcy court orders that are provisional in nature and subject to revision, and district court orders that remand the case to bankruptcy court without consideration of the merits of the appeal. See, e.g., *247 Computer Learning Ctrs., 407 F.3d at 661 (interim fee award subject to reevaluation by bankruptcy court); In re Wallace & Gale Co., 72 F.3d 21, 23-24 (4th Cir.1995) (district court order remanding case to bankruptcy court with instructions to certify an interlocutory appeal); In re Looney, 823 F.2d 788, 790-91 (4th Cir.1987) (bankruptcy court order continuing automatic stay until hearing on the merits of creditor’s motion for relief from stay).
In contrast to the interlocutory orders in those cases, here the bankruptcy court order clearly resolved a discrete issue, indeed, the only issue, in Mort Ranta’s bankruptcy case — that is, whether his proposed Chapter 13 plan merits confirmation. The bankruptcy court order denied confirmation of the proposed plan and directed the case dismissed unless Mort Ranta took further action, and the district court’s order simply affirmed. Nothing in either of the orders indicates that any issues concerning the proposed plan remained for the bankruptcy court’s consideration.
The argument against treating a denial of confirmation final for purposes of appeal rests primarily on the fact that the debtor may propose an amended plan before the case is dismissed. The Second Circuit first articulated this reasoning in Maiorino v. Branford Sav. Bank, 691 F.2d 89 (2d Cir.1982), which held that the denial of a Chapter 13 plan is interlocutory.[8] As the Maiorino court explained, “[s]o long as the petition is not dismissed, it is open to the debtor to propose another plan, and ... such a plan might well be acceptable to the parties or bankruptcy judge concerned.” 691 F.2d at 91 (citation omitted). Following the Second Circuit, three other circuits have held that a decision denying confirmation of a proposed plan but not dismissing the underlying bankruptcy petition is an interlocutory order. See In re Lievsay, 118 F.3d 661, 662 (9th Cir.1997) (per curiam); Lewis v. United States, Farmers Home Admin., 992 F.2d 767, 773 (8th Cir.1993); In re Simons, 908 F.2d 643, 645 (10th Cir.1990) (per curiam). According to the Tenth Circuit, “[tjhis approach is entirely consistent” with two general principles regarding finality: (1) that an order is not final unless it “ends the litigation on the merits, leaving nothing for the court to do but execute the judgment”; and (2) that a district court order is not final if it “contemplates significant further proceedings in the bankruptcy court.” Simons, 908 F.2d at 644-45.
We are not persuaded that a denial of confirmation should be considered an interlocutory order simply because the debt- or could propose an amended plan. That conclusion appears to be grounded upon standard finality principles, as demonstrated by the Tenth Circuit’s observations in Simons, rather than the more flexible approach to finality traditionally applied in bankruptcy proceedings. Indeed, Maiori-no, the seminal decision upon which nearly all other courts have relied, made no mention of a flexible approach, and instead opined that “[f]rom a policy point of view ... there is something to be said in a day of burgeoning appellate dockets for taking care not to construe jurisdictional statutes ... with great liberality.” 691 F.2d at 91. Although some courts have paid lip service to the flexible approach even as they have held denials of confirmation interlocutory, *248 see, e.g., In re Flor, 79 F.3d 281, 283 (2d Cir.1996) (per curiam); Lems, 992 F.2d at 772, they have generally used the same reasoning as Maiorino — that such orders are interlocutory because additional proceedings are available — which is consonant with a more rigid approach, see In re Bartee, 212 F.3d 277, 282 n. 6 (5th Cir. 2000) (observing that the Second and Tenth Circuits have “favor[ed] a rigid rule of finality” in holding that denials of confirmation are interlocutory).
Moreover, we find questionable the logic that denials of confirmation are interlocutory simply because the debtor may propose an amended plan, for the same can be said of a confirmation order. Even after a plan is confirmed, the debtor is always free to propose a modification to the plan, which could substantially modify the terms of repayment and the rights of creditors. See 11 U.S.C. § 1329(a). (Indeed, even the Trustee and the creditors may propose a modification. Id.)
We therefore agree with the more pragmatic approach of those circuits that have held that a denial of confirmation can be a final order for purposes of appeal even if the case has not yet been dismissed, recognizing that this conclusion “is all but compelled by considerations of practicality.” Bartee, 212 F.3d at 283; see also In re Armstrong World Indus., Inc., 432 F.3d 507, 511 (3d Cir.2005) (holding that a denial of confirmation was a final order for purposes of appeal, in part, due to “practical considerations in the interests of judicial economy”).[9]
As the Fifth Circuit explained in Bartee, a contrary rule could leave some debtors “without any real options in formulating [their] plan.” 212 F.3d at 283. Assuming an interlocutory appeal is unavailable, the debtor who prefers the proposed plan and seeks to appeal the denial would be forced to “choose between filing an unwanted or involuntary plan and then appealing his own plan, or dismissing his case and then appealing his own dismissal.” Id. Forced to suffer dismissal, the debtor could lose the automatic stay on foreclosure and collection actions that takes effect upon the filing of the Chapter 13 petition, see 11 U.S.C. § 362, and could be precluded from filing another bankruptcy petition for six months, see id. § 109(g). Forced to propose an unwanted plan, the debtor would waste “valuable time and scarce resources,” McDow, 662 F.3d at 287, on a plan proposed only for the purpose of obtaining appellate review of the earlier order.[10] Thus, as a practical matter, it makes little sense to deny debtors immediate appellate review simply because the case has not yet been dismissed and the debtor could propose an amended plan.[11]
*249 In arguing that the denial of confirmation should be considered interlocutory, the dissent contends that a “discrete dispute” should be limited, for purposes of evaluating the finality of a bankruptcy order, to “situations where one creditor’s rights become fixed while other issues in the bankruptcy case remain unresolved.” Infra p. 258. However, our Circuit has never articulated such a strict rule. Instead, as described above, we have held final a variety of orders that resolved a discrete dispute without fixing the rights of any one creditor. See infra p. 246 (collecting cases).
The dissent also contends that our decision “needlessly expands appellate jurisdiction” in bankruptcy, encouraging “start- and-stop” appeals from debtors whose plans are denied confirmation, discouraging negotiation and mediation in reorganization cases, and hampering the very aim of judicial economy guiding our decision. Infra p. 263. We disagree. First, as described above, our Court has a long history of allowing appeals from debtors whose proposed plans are denied confirmation. Infra pp. 245^6. Our holding today does not extend our appellate jurisdiction but instead justifies its existing parameters.[12]
Moreover, we see no reason to assume that debtors faced with a denial of confirmation will waste their resources on a gratuitous appeal simply because the option to appeal is available, when an amended plan would provide all the relief needed. Thus, to the extent the dissent suggests that our decision will encourage an onslaught of senseless “start-and-stop appeals,” undermining judicial economy, see infra p. 263, we disagree. Indeed, the alternative adopted by the courts upon which the dissent relies, that is, allowing debtors to appeal the denial of confirmation after an amended plan is confirmed, see, e.g., In re Zahn, 526 F.3d 1140, 1143-44 (8th Cir.2008), is hardly less economical, for it simply delays the inevitable in cases where the amended plan is unacceptable to the debtor.
Finally, we do not think it necessary to treat denials of confirmation as interlocutory in order to encourage negotiation and mediation in reorganization cases. As noted by the dissent in Maiorino, the effect of such a rule is that “when creditors lose and a plan is confirmed, creditors may appeal immediately as of right,” but “when debtors lose and a plan is rejected, they may appeal only by leave of the [reviewing] court,” 691 F.2d at 95 (Lumbard, J., dissenting). Given that “Congress enacted Chapter 13 to aid consumer debtors,” id., whatever the value of negotiation and mediation in Chapter 13 cases, that value is best fostered by an even playing field that affords debtors the same access to relief on appeal as creditors when a decision regarding the proposed plan is adverse to their interests.[13]
*250 In sum, because it is evident from the face of the underlying orders that confirmation of Mort Ranta’s proposed plan was finally denied, it would make little sense to force Mort Ranta to suffer dismissal or to waste resources on an amended plan before obtaining appellate review. Such a rule would be inconsistent with the pragmatic, less technical approach to finality we apply in bankruptcy proceedings. We therefore conclude that the bankruptcy court’s denial of confirmation and the district court’s affirmance are final orders for purposes of appeal under § 158(d)(1), and our appellate jurisdiction is proper.[14]
III.
Turning to the merits of the appeal, Mort Ranta argues that the bankruptcy court erred in denying confirmation of his plan because the Bankruptcy Code excludes Social Security income from the calculation of “projected disposable income,” and because his plan is feasible based on consideration of that income. When reviewing a decision by a district court sitting in its capacity as a bankruptcy appellate court, we review the factual findings of the bankruptcy court for clear error and the legal conclusions de novo. In re Kirkland, 600 F.3d 310, 314 (4th Cir.2010). Because this appeal presents only questions of statutory interpretation and the facts are undisputed, our review is de novo. In re White, 487 F.3d 199, 204 (4th Cir.2007).
A.
Chapter 13 of the Bankruptcy Code allows debtors with regular income to repay or discharge certain debts after making payments to creditors for a specified commitment period, generally three to five years. See 11 U.S.C. §§ 1301-1330. To obtain relief, the debtor must propose a debt adjustment plan that meets all the requirements for confirmation set forth in the Code. See id. §§ 1322, 1325. Relevant here, if the Trustee or an unsecured creditor objects to confirmation of the plan, the plan must either fully pay the unsecured claim or provide that all the debtor’s “projected disposable income” to be received during the applicable commitment period will be applied to make payments to unsecured creditors. Id. § 1325(b)(1). Prior to 2005, the Code defined disposable income as “income which is received by the debtor” less amounts reasonably necessary for the maintenance or support of the debtor, certain charitable contributions, and certain business expenses. 11 U.S.C. § 1325(b)(2) (2000). Based on this definition, “courts typically included Social Security benefits in the calculation of disposable income.” Baud v. Carroll, 634 F.3d 327, 347 (6th Cir.2011) (collecting cases).
In 2005, however, Congress amended the definition of “disposable income” with the "enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub.L. No. 109-8, 119 Stat. 23 (2005). The Code now defines “disposable income” as “current monthly income received by the debtor” less “amounts reasonably necessary to be expended” for the maintenance or support of the debtor, certain charitable contribu *251 tions, and certain business expenses. 11 U.S.C. § 1325(b)(2). “[CJurrent monthly income” means the debtor’s average monthly income from all sources during the previous six months, excluding, among other things, “benefits received under the Social Security Act.” Id. § 101(10A). Thus, Social Security income is now excluded from the definition of “disposable income.” In addition, the Code now requires above-median income debtors to use the “means test” — a statutory formula for determining whether a presumption of abuse arises in Chapter 7 cases — when calculating the “amounts reasonably necessary to be expended” for the debtor’s maintenance or support. See id. §§ 1325(b)(3), 707(b)(2). As a result, only certain specified expenses are included in the above-median income debtor’s “amounts reasonably necessary” for maintenance or support. Id. For below-median income debtors, however, the full amount reasonably necessary for maintenance and support is included. See § 1325(b)(2)(A)®.
Although the Bankruptcy Code defines the term “disposable income,” it does not specifically define “projected disposable income.” However, in Hamilton v. Lanning, the Supreme Court explained that “projected disposable income” should be calculated based on “disposable income,” using a “forward-looking approach.” 560 U.S. 505, 130 S.Ct. 2464, 2469, 177 L.Ed.2d 23 (2010). First, the debtor’s “disposable income” should be multiplied by the number of months in the debtor’s plan, and in most cases the result will be determinative. Lanning, 130 S.Ct. at 2471. However, “in exceptional cases, where significant changes in a debtor’s financial circumstances are known or virtually certain, the bankruptcy court has discretion to make an appropriate adjustment.” Id.; see also In re Quigley, 673 F.3d 269, 273-74 (4th Cir.2012) (noting that under Lanning, bankruptcy courts may account for foreseeable changes in both income and expenses).
Following Lanning, a debtor’s “projected disposable income” is based on the debtor’s “disposable income,” give or take any adjustments necessary to account for foreseeable changes in that income. Because the Code expressly excludes Social Security income from “current monthly income,” and thus, “disposable income,” it follows that Social Security income must also be excluded from “projected disposable income.” Indeed, every other circuit to address this issue has arrived at the same conclusion. See In re Welsh, 711 F.3d 1120, 1127 n. 28, 1130-31 (9th Cir.2013) (noting that the statute clearly excludes Social Security income); In re Ragos, 700 F.3d 220, 223 (5th Cir.2012) (same); In re Cranmer, 697 F.3d 1314, 1317-18 (10th Cir.2012) (same); Baud, 634 F.3d at 345 (same).
The Trustee’s arguments to the contrary are neither persuasive nor consistent with the plain language of the Code. The Trustee first claims that the revised definition of “disposable income” applies only to above-median income debtors, not to below-median income debtors, like Mort Ranta. But the Code provides a single definition of “disposable income,” and that definition uses “current monthly income” as a starting point without differentiating between debtors of different income levels. 11 U.S.C. § 1325(b)(2). Although the Code goes on to distinguish between above-median income and below-median income debtors for purposes of calculating the “amounts reasonably necessary” for the debtor’s maintenance or support, id. § 1325(b)(3), there is no distinction on the income side.
Next, the Trustee argues that the Supreme Court’s decision in Lanning allows *252 Social Security income to be included in “projected disposable income” even if it is excluded from “disposable income.” In Lanning, however, the Court held only that foreseeable changes in the debtor’s financial circumstances may be taken into account when calculating “projected disposable income,” not that the basic formula for “disposable income” may be ignored. See Cranmer, 697 F.3d at 1318 (“[Njothing in Lanning suggests a court may disregard the Code’s definition of disposable income in calculating projected disposable income.”); Baud, 634 F.3d at 345 (“[T]he discretion Lanning affords ... does not permit the court to alter the items to be included in and excluded from income.”). We do not consider Lanning to authorize the bankruptcy court to read out of the Code the BAPCPA’s revisions to the definition of “disposable income.” “If Congress excluded social security income from current monthly income and disposable income, it makes little sense to circumvent that prohibition by allowing social security income to be included in projected disposable income.” Rogos, 700 F.3d at 223.
The Trustee also argues that Social Security income must be included in the calculation of a below-median income debtor’s “disposable income” because Schedule I contains a line for its inclusion. The Trustee contends that Schedule I is used with Schedule J to calculate the disposable income of below-median income debtors. The language of the forms, however, does not support the Trustee’s contention. Schedule I states that it calculates “average monthly income,” not “current monthly income.” And Schedule J, which references Schedule I, calculates “monthly net income,” not “disposable income.” The bankruptcy court may not “disregard the Code’s definition of disposable income ... simply because there is a disparity between the amount calculated using that definition and the debtor’s actual available income as set forth on Schedule I.” Baud, 634 F.3d at 345.
Given the Trustee’s confusion over this issue, we emphasize that, for all debtors, the starting point for calculating projected disposable income is the debtor’s “current monthly income,” which is provided by Form B22(C). For above-median income debtors, Parts IV and V of Form B22(C) allow the debtor to calculate “disposable income” by deducting the limited expenses allowed under the means test from the debtor’s “current monthly income.” For below-median income debtors, however, “disposable income” should be calculated by subtracting the full amount “reasonably necessary to be expended” for the debtor’s support or maintenance, based on information provided in Schedule J, from the “current monthly income” figure. Using the “disposable income” figure, “projected disposable income” should then be calculated consistent with the Supreme Court’s instructions in Lanning.
Finally, the Trustee argues that failing to require below-median income debtors to include Social Security income in their “projected disposable income” would contravene Congress’ intent to eradicate bankruptcy abuse when it enacted the BAPCPA. See Ransom v. FIA Card Servs., N.A., — U.S.—, 131 S.Ct. 716, 721, 178 L.Ed.2d 603 (2011) (“Congress enacted the [BAPCPA] to correct perceived abuses of the bankruptcy system. In particular, Congress adopted the means test ... to help ensure that debtors who can pay creditors do pay them.”) (internal quotation marks and citations omitted). For instance, the Trustee argues that if Social Security income is not included, then debtors will have total discretion to dictate the amount of income they want to contribute to the plan. But this is not necessarily so. It is true that a Chapter *253 13 debtor with zero or negative “projected disposable income” is not required to apply any income to payments to unsecured creditors under § 1325(b)(1)(B). The debtor’s plan, however, still must satisfy every other requirement for confirmation set forth in the Code. Among other requirements, the plan must meet the “best interests of the creditors” test, i.e., unsecured creditors must not receive less than they would in a Chapter 7 liquidation of the estate, 11 U.S.C. § 1325(a)(4), and the plan must have been proposed in good faith, id. § 1325(a)(3).[15]
More fundamentally, the concerns over abuse raised by the Trustee are best addressed to Congress, not to this Court. The function of the judiciary is to apply the law, not to rewrite it to conform with the policy positions of litigants. When the statutory language is clear, as it is in this case, our inquiry must end. See In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir.2004) (“As a settled principle, unless there is some ambiguity in the language of a statute, a court’s analysis must end with the statute’s plain language.” (internal quotation marks, citations, and alteration omitted)).[16]
In sum, we hold that, for both above-median income and below-median income debtors, Social Security income is excluded from the calculation of “projected disposable income” under § 1325(b)(2).
B.
We next address whether the district court erred when it disregarded Mort Ranta’s Social Security income for purposes of evaluating whether his plan was feasible. The “feasibility” requirement is expressed in § 1325(a)(6), which states that the plan shall be confirmed if “the debtor will be able to make all payments under the plan and to comply with the plan.”
The bankruptcy court reasoned that if Social Security income is excluded from “disposable income,” then it must also be excluded when evaluating whether the plan is feasible. But nothing in the Code supports this conclusion. Section 1325(a)(6) simply states that a debtor must be able to make the payments required by the plan; it does not state that only “disposable income” may be used to make payments. Further, it has long been established that Social Security income may be used to fund a Chapter 13 plan. See 11 U.S.C. § 109(e) (allowing individuals with “regular income” to be debtors under Chapter 13); United States v. Devall, 704 F.2d 1513, 1516 (11th Cir.1983) (explaining that originally only “wage earners” could file under Chapter 13, and that in 1978 Congress amended the Code to extend relief to individuals with “regular income,” in part, to benefit Social Security recipients) (citing S.R. No. 95-989, at 13 (1978), 1978 U.S.C.C.A.N. 5799; H.R. No. 95-595, (1977), 1978 U.S.C.C.A.N. 5963, 6080); see *254 also Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure § 3:7 (2012) (noting that “permissible sources of regular income include ... social security benefits”). According to the bankruptcy court’s interpretation of the Code, however, it is unlikely that a debtor whose primary source of income is Social Security could ever propose a confirmable plan, for the debtor would be unable to prove feasibility. There is no indication Congress intended to throw this kind of obstacle to relief in the way of Social Security recipients when it revised the definition of “projected disposable income” with the BAPC-PA.
We therefore hold, in agreement with the Sixth Circuit, that “a debtor with zero or negative projected disposable income may propose a confirmable plan by making available income that falls outside of the definition of disposable income— such as ... benefits under the Social Security Act — to make payments under the plan.” Baud, 634 F.3d at 352 n. 19; see also In re Kibbe, 361 B.R. 302, 314 n. 11 ( 1st Cir. BAP 2007) (per curiam) (noting that the revised definition of projected disposable income “does not preclude a debt- or’s use of available monies excluded from the definition ... to support the feasibility of the debtor’s plan). Thus, in evaluating whether a debtor will be able to make all payments under the plan and comply with the plan, the bankruptcy court must take into account any Social Security income the debtor proposes to rely upon, and may not limit its feasibility analysis by considering only the debtor’s “disposable income.” If the debtor’s actual net income, including Social Security income, is sufficient to cover all the required payments, the plan is feasible.
In arguing otherwise, the Trustee cites a single bankruptcy court case from another circuit, which we do not find persuasive. See In re Schanuth, 342 B.R. 601, 605 (Bankr.W.D.Mo.2006) (holding that a debt- or’s plan was not feasible because the monthly payments exceeded “disposable income”). The Schanuth court relied exclusively on bankruptcy cases predating the BAPCPA, without taking into account how the BAPCPA’s revised definition of “disposable income” affects the feasibility analysis. See id. n. 11 (collecting cases). Although before the BAPCPA, it would make sense to find a plan unfeasible when “disposable income” exceeded the payments required by the plan, that is no longer the case.
For these reasons, we hold that when a Chapter 13 debtor proposes to use Social Security income to fund a plan, the bankruptcy court must consider that income in evaluating the plan’s feasibility under § 1325(a)(6).
IV.
Given that circumstances may have changed during the pendency of this appeal, we do not decide whether Mort Ran-ta’s plan should be confirmed, but instead remand the case to allow the bankruptcy court to reconsider the plan in light of our holdings. Accordingly, we vacate the order of the district court and remand the case to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

VACATED AND REMANDED

. Although the docket lists the appellant's surname as "Ranta,” his correct surname, according to his counsel, is "Mort Ranta.” We therefore use "Mort Ranta” in the opinion.

. Specifically, the plan would provide a distribution of .0042 on the individual credit card debt.

. As explained below, § 1325(b)(1) applies when the Trustee or an unsecured creditor objects to a Chapter 13 plan. In that case, the plan may not be approved unless it (A) fully pays the unsecured claim or (B) dedicates all the debtor's "projected disposable income" during the commitment period to payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).

.The enumerated actions include filing a new modified Chapter 13 plan, converting the case to another chapter of the Bankruptcy Code, filing a motion for reconsideration, or appealing the denial of confirmation. Bankr. Ct. R. 3015-2(H)(3).

. Mort Ranta does not claim to have complied with the procedure for certifying a direct appeal under § 158(d)(2).

. In tension with this practice, in an unpublished decision we once dismissed an appeal similar to the one at bar for lack of appellate jurisdiction. See In re Massey, 21 Fed.Appx. 113, 114 (4th Cir.2001) (per curiam) (unpublished). This decision has minimal persuasive value, however, as it relied entirely on out-of-circuit authority without providing any independent reasoning. See id.

. We have applied the same relaxed and pragmatic approach to finality whether the appeal is brought under 28 U.S.C. §§ 158 or 1291. Compare McDow v. Dudley, 662 F.3d 284, 286-87 (4th Cir.2011) (applying the more pragmatic and less technical approach in an appeal brought under § 158), with Comm. of Dalkon Shield Claimants v. A.H. Robins Co., Inc., 828 F.2d 239, 241 (4th Cir.1987) (using the same approach in an appeal brought under § 1291).

. The jurisdictional statute at issue in that case was former 28 U.S.C. § 1293(b), which was replaced by 28 U.S.C. § 158(d) when Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333. "Because both statutes contain the finality requirement, courts have applied the cases brought under section 1293(b) to section 158(d) cases.” In re Brown, 803 F.2d 120, 122 n. 3 (3d Cir.1986).

. While we find the decisions of these circuits persuasive, contrary to the dissent's assertions, we do not adopt any of the methodology they use to evaluate finality in bankruptcy (such as multi-factor tests), which the dissent considers too "indeterminate.” See infra pp. 258 n. 6, 259, 262-63. Rather, our decision is based on the principles of finality traditionally applied by our Circuit in bankruptcy cases. See supra p. 246.

. In addition, the procedural oddity of allowing a debtor to appeal the confirmation of his or her own proposed plan raises questions regarding standing. To have standing to appeal a bankruptcy order, the appellant must be a "person aggrieved” by the order, that is, a person "directly and adversely affected pe-cuniarily.” In re Urban Broad. Corp., 401 F.3d 236, 243-44 (4th Cir.2005). Although the Eighth Circuit has held that a debtor forced to propose an amended plan has standing to appeal as a "person aggrieved” by the confirmation order, see In re Zahn, 526 F.3d 1140, 1142 (8th Cir.2008) (reversing the contrary ruling of the Bankruptcy Appellate Panel), we have not yet addressed this issue.

.The dissent argues that our reasoning "assumes too much of the debtor's intent.” Infra p. 263. However, it is reason, not assumption, which leads us to conclude that the *249 initial plan proposed by the debtor is the debtor’s preferred plan — especially given that the Bankruptcy Code requires Chapter 13 debtors to propose their plans in good faith, see 11 U.S.C. § 1325(a)(3) — and therefore that some debtors will disagree with the denial of confirmation and want to appeal the decision.

. We do not rely, as the dissent suggests, infra p. 260, on any sub silentio holdings in the cases cited infra pages 245-48. Rather, we cite these cases to show that our Circuit has a history of hearing appeals from denials of confirmation, even if we have not yet squarely addressed the basis for our jurisdiction.

. The dissent also argues that our decision “effectively reads out” the avenues for interlocutory relief afforded by the certification provisions of 28 U.S.C. §§ 158(d)(2) and 1291(b). Infra p.263. This is not so. Those provisions remain available to authorize direct appeals from any number of bankruptcy court rulings on novel or disputed legal issues, or other issues of importance, without regard to the finality of the underlying order. *250 We simply hold, regardless of whether this case presents such an issue, that the denial of confirmation is appealable as a final order.

. During the pendency of this appeal, the bankruptcy court conditionally confirmed Mort Ranta's proposed plan pending the outcome of his appeal to allow the Trustee to disburse to creditors funds Mort Ranta had paid to the Trustee. Mort Ranta argues that the conditional confirmation order cures any defect in the finality of the denial of confirmation. Because we hold that the denial of confirmation is final and appealable, we do not reach this argument.

. We note, however, that the exclusion of Social Security income from disposable income, as required by statute, by itself, does not constitute bad faith. See In re Ragos, 700 F.3d 220, 227 (5th Cir.2012) ("[RJetention of exempt social security benefits alone is legally insufficient to support a finding of bad faith under the Bankruptcy Code); In re Cranmer, 697 F.3d 1314, 1319 (10th Cir.2012) ("When a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes SSI, that exclusion cannot constitute a lack of good faith.”).

. Because we hold that the Bankruptcy Code expressly excludes Social Security income from the calculation of "projected disposable income,” we do not reach Mort Ranta’s alternative argument that the Social Security Act protects Social Security income from the operation of Chapter 13 proceedings. See 42 U.S.C. § 407.