**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2526**

In Re:  CHRISTOPHER J. FINA; CARLY ELIZABETH FINA,

          Debtors.

--------------------------

RONALD  BRADLEY;  TERRI  LEE  BRADLEY;  WILLIAM  A.  ERHART;
M. RYAN MADISON,

          Plaintiffs – Appellants,

      v.

CHRISTOPHER J. FINA,

          Defendant – Appellee,

      and

CARLY ELIZABETH FINA,

          Defendant.

Appeal  from  the  United  States  District  Court  for  the  Eastern
District  of  Virginia,  at  Alexandria.   Gerald  Bruce  Lee,  District
Judge;  Theresa  C.  Buchanan,  Magistrate  Judge.   (1:12-cv-00660-
GBL-TCB; 10-13678-RGM)

Argued:  October 31, 2013        Decided:  January 7, 2014

Before GREGORY, SHEDD, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Kevin Jerome Funk, DURRETTECRUMP PLC, Richmond, Virginia, for Appellants. Richard George Hall, Annandale, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case involves the appellants' violation of a bankruptcy court's discharge injunction. The bankruptcy court imposed contempt sanctions against the appellants, and the district court upheld the decision. Finding no error, we affirm.

I.

The matter originated with a 2006 agreement between Ronald and Terri Bradley and Christopher Fina. Fina, operating a construction business under the name Fina Homes and Remodeling, agreed to perform work on the Bradleys' home. Shortly after the work began, a city inspector discovered defects in the construction and issued a stop work order on the project. After attempts to resolve the situation failed, the Bradleys filed a lawsuit in Minnesota state court against Fina and his father, James Edward Fina, alleging several state law claims. Fina's father was named as a party because he was identified as an owner/licensee of Fina Homes and Remodeling.

The Bradleys served James Fina with the complaint but were unable to locate the younger Fina. On September 3, 2009, after James Fina failed to answer the complaint, the Minnesota court entered a default judgment against him in the amount of $40,865.

The Bradleys then discovered that James Fina was not a viable source of recovery and began contemplating whether they were entitled to relief under the Minnesota Contractors Recovery Fund ("MCRF" or "Fund"). Created by Minnesota law, the MCRF is designed to provide up to $50,000 to homeowners who have suffered a loss caused by a licensed contractor's failure to adequately complete a construction project. Minn. Stat. § 326B.89, subd. 4. As a prerequisite to recovering from the Fund, homeowners must obtain a court judgment against each licensed member of the contracting company. Id. § 326B.89, subd. 6. The statute notes that homeowners may seek compensation regardless of whether the final judgment against the contractor has been discharged by order of a bankruptcy court. Id. The Fund does not guarantee full payment of any claim and does not cover attorneys fees or costs. Id. Instructions from the Minnesota Department of Commerce, which administers the program, advise that in cases where the contractor has filed for bankruptcy, the applicant "will need to petition the Judge of the Bankruptcy Court to lift the automatic stay and explain that your lawsuit is solely for the purpose of obtaining restitution from the Recovery Fund and that you understand that you will not be able to collect the judgment from the contractor directly."

4

The Bradleys hired an attorney, appellant M. Ryan Madison, to assist them in their efforts to collect under the MCRF. They filed an application with the Fund based on the default judgment they had previously obtained against James Fina. However, the state denied the Bradleys' application because of their failure to also obtain a judgment against Christopher Fina. Id.

In the meantime, Christopher Fina filed a petition under Chapter 7 of the United States Bankruptcy Code in the Eastern District of Virginia. As creditors, the Bradleys were notified of the action, and they ceased efforts to collect against Fina in light of the automatic stay provisions of the bankruptcy petition. On August 19, 2010, the Bradleys received notice that Fina's debt to them had been discharged pursuant to an approved bankruptcy plan.

Aware of the discharge, Madison contacted the Minnesota Attorney General's office for advice on whether he could still pursue relief under the MCRF. Madison was advised to include language in an amended complaint indicating that the sole purpose of the action was to obtain a judgment against Fina in order to seek recovery under the Fund. Id.

On October 12, 2010, the Bradleys filed an amended complaint in Minnesota state court against the Finas. It sought monetary damages totaling $58,377.50, as well as attorney's fees and costs. However, paragraph six of the amended complaint

5

stated that: "[t]his lawsuit is being filed solely for purposes of collecting from the [MCRF] pursuant to Minnesota Statute § 326B.89."

Fina retained new counsel in Minnesota to defend the suit and filed an answer. Paragraph two of the answer admitted paragraphs one through eight of the Bradleys' amended complaint, including the stipulation that the suit was brought solely for purposes of collecting under the MCRF.

After the Bradleys hired appellant William Erhart to serve as additional counsel, the parties engaged in settlement talks. A tentative agreement was reached wherein Fina would allow the Bradleys to obtain a default judgment against him in the amount of $50,000 in order to enable them to pursue relief from the Fund. In exchange, the Bradleys would drop Fina's father from the lawsuit. Erhart then received a letter from Fina's Minnesota counsel stating that the viability of the settlement was in question due to objections from Fina's bankruptcy counsel in Virginia.

Upon Fina's petition, the bankruptcy court reopened the case, issued a show cause order against the appellants, and set the matter for trial. The issue at trial was whether the Bradleys and their counsel acted in contempt of the bankruptcy court's discharge injunction when they filed the amended complaint.

6

At the close of trial, the bankruptcy court ruled against the appellants. The court found that they willfully violated the discharge injunction because, despite the self-imposed limitation in paragraph six of the complaint, the Minnesota lawsuit subjected Fina to personal liability and imperiled his right to an economic fresh start. The court ordered the appellants to pay Fina $31,192.98, which included his attorney's fees and costs, as well as $4,000 for lost wages, lost vacation pay, and pain and suffering. The district court affirmed the decision of the bankruptcy court in all respects except for the pain and suffering damages.

After the bankruptcy court issued its decision, it granted a motion allowing the Bradleys to continue pursuing their claim against Fina in Minnesota state court so that they might eventually collect under the MCRF. The order granting the motion contained several stipulations, including that the Bradleys not seek to hold Fina personally liable for any amount.

## II.

Section 524(a)(2) of the Bankruptcy Code provides that a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C.

7

§ 524(a)(2). Section 105 authorizes a bankruptcy court to hold a party in civil contempt for violating an order of the court, including a discharge order. See In re Barbour, 77 B.R. 530, 532 (Bankr. E.D. N.C. 1987). Most courts to have considered the issue of contempt sanctions in this context have settled on a two-part test, which we adopt: (1) whether the creditor violated the injunction, and (2) whether he or she did so willfully. See, e.g., In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002); In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996); In re Cherry, 247 B.R. 176, 187-88 (Bankr. E.D. Va. 2000).

As the language of § 524(a)(2) makes clear, a violation occurs when the debtor is exposed to personal liability. The willfulness prong requires only that the acts taken in violation of the injunction be intentional. In other words, a good faith mistake is generally not a valid defense. See In re Stempf, 37 F.3d 155, 159 (4th Cir. 1994) (evaluating willfulness in context of an automatic stay violation and stating "[t]o constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay."); In re Cherry, 247 B.R. at 187 ("In a civil contempt proceeding, the state of mind with which the contemnor violated a court order is irrelevant and therefore good faith, or the absence of an intent to violate the order, is no defense.").

The appellants argue that the stipulation in paragraph six of the amended complaint, which states that the lawsuit was filed solely for purposes of collecting from the MCRF, indicates that the suit did not expose Fina to personal liability and therefore did not violate the discharge order. The appellants also contend that Fina's answer admitting paragraph six is dispositive because it shows that both parties understood the suit not to affect Fina personally.

We disagree, holding that the courts below did not clearly err in determining that the amended complaint exposed Fina to the potential for personal liability on his discharged debt. Mort Ranta v. Gorman, 721 F.3d 241, 250 (4th Cir. 2013) (stating standard of review). First, the lawsuit sought a legal ruling that Fina was responsible for the loss suffered by the Bradleys -- the very same claim which gave rise to the discharged debt. On its face, then, the lawsuit was an attempt to hold Fina accountable for the underlying debt, despite the limitation in paragraph six.

More importantly, the amended complaint sought damages in excess of the $50,000 statutory cap available under the MCRF. The Bradleys requested specific monetary damages of $58,377.50, as well as attorney's fees and costs, which are expressly not available under the MCRF. Thus, even assuming that the appellants' intent at the time of filing the suit was only to

9

collect from the Fund, if the Minnesota state court had entered judgment in the amount requested in the amended complaint, nothing but the appellants' good word would prevent them from later using the judgment to collect the additional sums from Fina. At the very least, Fina would have an excess judgment amount hanging over his head for the indefinite future.[*]

The purpose behind the discharge injunction is "to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection effort, and to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it." In re Cherry, 247 B.R. at 182 (internal quotation marks omitted). The evidence in this case shows that, in contrast, Fina was justifiably concerned that his discharged debt remained a source of potential liability for him, at least insofar as he might feel obligated to continue to defend himself from future collection efforts. We are thus satisfied that the courts below did not clearly err in ruling that the amended complaint exposed Fina to personal liability in violation of the discharge injunction.

---

[*] The district court also correctly noted the legitimate concern that Fina's credit rating might suffer from an entry of judgment against him, further imperiling his right to a fresh economic start guaranteed by 11 U.S.C. § 524.

10

As to the second element of a contempt claim, the courts below also rightly held that the appellants' violation of the discharge injunction was willful. As stated, the appellants' intentions and their apparent attempts to comply with the law are irrelevant. There is no dispute that the Bradleys and their counsel were aware of the injunction at the time they filed the amended complaint. This is sufficient to establish that the violation was willful. See In re Stempf, 37 F.3d at 159; In re Hardy, 97 F.3d at 1390 ("[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.") (quoting Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990)).

Our decision does not mean that the Bradleys were without a means to recover from the Fund once Fina filed his bankruptcy petition. The Bradleys could have requested leave from the bankruptcy court prior to filing the amended complaint. This would have enabled the bankruptcy court to determine at the outset whether the amended complaint sought to hold Fina personally liable for any of the discharged debt, as well as given the court the opportunity to impose limiting conditions designed to protect Fina from post-judgment issues that might negatively affect his rights. Indeed, the Bradleys, albeit too

11

late to save them here, eventually did this, and the bankruptcy court allowed them to continue their efforts to recover from the Fund. Such a step also accords with guidance from the Minnesota Department of Commerce advising MCRF applicants to petition the bankruptcy court before filing suit.

We also note that we are not persuaded by the appellants' attempts to analogize this case with those that have allowed suits nominally brought against debtors but only for the purpose of collecting on a third-party insurer's contractual obligation on an underlying debt. This rule derives from 11 U.S.C. § 524(e), which provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." As is the case with the MCRF, creditors are often required to obtain a judgment against the debtor before collecting from an insurer. However, this case differs in that there is no "liability of any other entity on . . . [the] debt." Unlike an insurer, the MCRF is under no obligation, contractual or otherwise, to recompense the Bradleys. Therefore, § 524(e) simply does not apply in this case.

Additionally, the fact that the MCRF is not an insurer relegated the cost of defending the lawsuit entirely to Fina. Ordinarily, an insurance company is obligated to defend an insured debtor, or at least will have an interest in doing so in

order to avoid a default judgment. Here, however, the absence of a third-party insurer meant that Fina had to defend the lawsuit himself. This came at a financial cost that interfered with his right to a fresh economic start. See In re Gas Transmission Corp., 219 B.R. 716 (S.D. W. Va. 1998) (holding that a tort victim could not proceed against a debtor solely for the purpose of recovering from the debtor's insurer where the debtor would be liable for defense of the suit).

In sum, we are not persuaded to accept the appellants' argument that creditors may bypass the bankruptcy court's discharge injunction without first requesting that court's permission. As the bankruptcy judge noted in this case, he is routinely asked to consider such modifications to discharge injunctions, and he routinely grants them. The proper course for the appellants was to first seek leave of the bankruptcy court before pursuing a judgment against the debtor.


III.

For the reasons stated, we affirm the district court's judgment upholding the bankruptcy court's decision.

AFFIRMED

13