PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: COMPUTER LEARNING CENTERS,
INCORPORATED,
*Debtor.*

---

H. JASON GOLD, Former Chapter 7
Trustee; GOLD, MORRISON &
LAUGHLIN, P.C.,
*Plaintiffs-Appellants,*

v.

RON GUBERMAN, Creditor
Committee,
*Creditor,*

DONALD F. KING; W. CLARKSON
MCDOW, JR.,
*Trustees.*

No. 03-1289

---

STEVEN H. GOLDBLATT,
*Amicus Curiae.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-02-1582-A; 01-80096-RGM)

Argued: March 18, 2005

Decided: May 13, 2005

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

Dismissed and remanded with instructions by published opinion. Judge Niemeyer wrote the opinion, in which Judge Luttig and Judge King joined.

---

**COUNSEL**

**ARGUED:** H. Jason Gold, WILEY, REIN & FIELDING, L.L.P., McLean, Virginia, for Appellants. Kathy J. Huang, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Raymond R. Pring, Jr., Dylan G. Trache, WILEY, REIN & FIELDING, L.L.P., McLean, Virginia, for Appellants. Steven H. Goldblatt, Director, Nathan J. Novak, Student Counsel, Randi L. Wallach, Student Counsel, GEORGETOWN UNIVERSITY LAW CENTER, Appellate Litigation Program, Washington, D.C., for Amicus Curiae.

---

**OPINION**

NIEMEYER, Circuit Judge:

In the Chapter 7 bankruptcy proceeding of Computer Learning Centers, Inc. ("CLC"), the bankruptcy court entered an order dated August 9, 2002, awarding "interim" fees to the trustee and trustee's counsel, as well as to the accountants. The awards were made for the period that ended at the time the trustee resigned (because of a conflict of interest) and a successor trustee was appointed. By order dated January 31, 2003, the district court affirmed the bankruptcy court's order.

The former trustee and trustee's counsel have now appealed the district court's order to this court, raising issues about the amount of the fees awarded. We conclude, however, that the bankruptcy court's order was not a final order under 28 U.S.C. § 158(a) and that, therefore, the district court's order was not a final order in the bankruptcy case that is reviewable by this court under § 158(d). Accordingly, we dismiss this appeal without reviewing the merits of the questions

raised and remand with instructions to the district court to vacate its January 31, 2003 order for lack of jurisdiction.

I

CLC formerly operated a computer training school with 9000 students and 1600 employees at 25 locations nationwide. When CLC filed a voluntary petition under Chapter 7 of the Bankruptcy Code in January 2001, the bankruptcy court appointed H. Jason Gold as Chapter 7 trustee. With the bankruptcy court's permission, Trustee Gold then employed his law firm, Gold, Morrison & Laughlin P.C. ("GM&L"), as trustee's counsel. When, in April 2002, GM&L merged into Wiley, Rein & Fielding LLP, conflicts of interest arose for Gold, and accordingly he resigned as trustee in July 2002.

During his tenure as trustee, Gold enjoyed substantial success in increasing the value of CLC's estate. Through special counsel retained by him, Gold was able to negotiate with the United States Department of Education for its unencumbering of certain CLC assets that had become "tainted" due to CLC's unfulfilled liabilities to the federal government. He was then able to generate approximately $22 million in proceeds from the disposal of those assets. In addition, Gold operated CLC's collection division for 15 months, collecting $3.4 million of the approximately $8 million in outstanding CLC student loans and ultimately selling the remaining receivables for $2.2 million. Trustee Gold was also involved in the establishment and operation of a records retention center to centralize and organize CLC's student and business records. According to Gold, "the CLC case has been considered to be one of the most complex Chapter 7 bankruptcy cases ever filed in the region." He said that, even though some persons considered it a "no asset" case, "[he] turned the case into a success . . . acknowledged by virtually all major parties to the case."

For his work, Trustee Gold filed four interim fee applications with the bankruptcy court. In his first application, he requested and was awarded $134,441, the maximum allowable to trustees under § 326(a) of the Bankruptcy Code, based on the estate's disbursements as of that time.* Gold's second, third, and fourth fee applications were

---

*Section 326(a) provides in relevant part:

   (a)   In a case under chapter 7 or 11, the court may allow reason-

addressed in the bankruptcy court's August 9, 2002 order. They requested a total of $164,792, and the bankruptcy court awarded Gold a total of $167,835. Of the $167,835 awarded, however, the bankruptcy court allowed immediate disbursement of only $116,340, noting that the balance owed to Gold would be payable upon further order of the court as additional funds came into the estate and the maximum allowable trustee compensation under § 326(a) of the Bankruptcy Code correspondingly increased. The bankruptcy court also observed that since Gold had been forced to resign as trustee and a successor trustee had been appointed, it was impossible to determine, at that time, the total trustees' fees that would be incurred in the case. "A problem may arise," the court explained, "if the total trustees' fees exceed the allowable maximum provided by § 326(a)." Accordingly, the court made clear that the fees awarded were "provisional only and [might] be adjusted at the conclusion of the case."

Trustee Gold's law firm, GM&L, likewise submitted a series of fee applications to the bankruptcy court. In its first application, GM&L requested $205,632 in fees and $33,491 in expenses. The bankruptcy court awarded GM&L the full fees and reduced the expenses to $22,752. GM&L's second through sixth applications, which requested a total of $285,796 in fees plus $52,086 in expenses, were addressed in the bankruptcy court's August 9, 2002 order. The bankruptcy court awarded GM&L a total of $254,630 in fees, and of that amount, it characterized $25,873 as attributable to services properly performable by the trustee, not trustee's counsel. That amount was therefore subject to the aggregate cap on trustees' fees. Of the $52,086 claim for

able compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest*, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (emphasis added).

expenses, the bankruptcy court awarded GM&L $33,322. In its order, the bankruptcy court ordered disbursement of all sums allowed to GM&L, except for $7,356 of the fee award, stating that this amount "shall be payable only upon further order of this court as the maximum compensation allowable for trustee fees . . . is increased." As with its award to Trustee Gold, the bankruptcy court stated that it was awarding GM&L "interim fees" and that "[a]ll fees awarded [were] provisional and [were] subject to disgorgement."

In addressing Trustee Gold and GM&L's fee applications, the bankruptcy court employed the lodestar method, beginning with a determination of the allowable hourly rate. The court noted that "[n]either the trustee nor his law firm [had] presented any evidence on [the prevailing market rate for attorneys' fees]" and rejected the $295 per hour rate claimed by Gold and GM&L. The court explained that it was in an "excellent position to evaluate the prevailing market rate for attorney's fees by virtue [of] the innumerable fee applications presented to the court" and concluded that $265 per hour was the "current prevailing rate." Rejecting any enhancement of the lodestar, the court observed that "the size of the estate and the concomitant complexity are fully accounted for in the compensation of the professionals by the additional hours expended to meet these challenges."

Trustee Gold and GM&L appealed the August 9, 2002 fee award order to the district court, and the district court summarily affirmed by an order dated January 31, 2003, "on the sound reasoning of the Bankruptcy Court." The district court concluded that the bankruptcy court's findings "were neither clearly erroneous, nor contrary to law."

From the district court's January 31, 2003 order, Trustee Gold and GM&L filed this appeal. They contend that the bankruptcy court misconstrued and misapplied 11 U.S.C. § 326(a); that the bankruptcy court erred in establishing $265 as a prevailing market rate for attorneys' fees; that the bankruptcy court improperly denied reimbursement for computer assisted legal research and, in doing so, subtracted the incorrect amount from GM&L's expenses when excluding that research; and that the bankruptcy court erred in denying them compensation for preparing fee applications for other professionals. Steven H. Goldblatt, Esquire, whom we appointed as amicus curiae to respond to the appellants' arguments, contends, among other things,

that this court does not have subject matter jurisdiction over this appeal because the bankruptcy court's order allowing interim fees was an interlocutory order not subject to appeal under 28 U.S.C. § 1291 or 28 U.S.C. § 158(d).

II

At the outset, we determine whether we have jurisdiction to review the district court's order, which depends on whether the district court had jurisdiction to review the bankruptcy court's August 9, 2002 order. *See* 28 U.S.C. § 158(a), (d). Section 158(a) of Title 28 gives district courts jurisdiction to hear appeals "from final judgments, orders, and decrees" entered by bankruptcy courts, and § 158(d) gives courts of appeals jurisdiction over "appeals from all final decisions, judgments, orders, and decrees entered" by district courts reviewing bankruptcy court decisions under § 158(a). Thus, if, in this case, the bankruptcy court's fee-award order was not final, the district court did not have subject matter jurisdiction to review it on appeal, and the district court's order was not a final order in the bankruptcy case giving us jurisdiction to review it on appeal.

The concept of finality in bankruptcy cases "has traditionally been applied 'in a more pragmatic and less technical way . . . than in other situations.'" *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (quoting *In Re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985)). Accordingly, "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983) (Breyer, J.); *see also A.H. Robins Co.*, 788 F.2d at 1009 (citing with approval then-Judge Breyer's characterization of "finality" in *Saco*).

Consistent with this "pragmatic" view of finality in the bankruptcy context, "several cases [have] recognize[d] that a bankruptcy court's order of compensation may be considered final 'where the order conclusively determine[s] the entire section 330 compensation to be paid' to the attorneys." *In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991) (quoting *In re Spillane*, 884 F.2d 642, 644 (1st Cir. 1989)). Such compensation orders, however, are not normally so conclusive, and "an *interim* award of compensation granted by a bankruptcy court in an

ongoing bankruptcy proceeding generally is an interlocutory order not subject to review in [the court of appeals]." *Id.* (emphasis added). The interim fee order becomes final only "when it is no longer subject to modification by the bankruptcy court." *Id.*; *see also Cluck v. Osherow (In re Cluck)*, 101 F.3d 1081, 1082 (5th Cir. 1996) (noting that "[e]very circuit which has addressed this issue has concluded that an interim award of compensation granted by a bankruptcy court in an ongoing bankruptcy proceeding generally is an interlocutory order which is not subject to review"); *In re Dahlquist*, 751 F.2d 295, 297 (8th Cir. 1985) (noting that "orders granting interim compensation in an ongoing bankruptcy proceeding generally are considered to be interlocutory in nature," but that finality really depends on the "circumstances of the case").

Turning to the circumstances before us, Trustee Gold and GM&L acknowledge that the bankruptcy court entered an "interim" fee award order that was subject to "disgorgement." But they argue that the interlocutory designation in the order was only a formality that cannot realistically govern whether the order in this case was in fact final. Gold and GM&L specifically deny the possibility that the bankruptcy court might have to order them to disgorge the disbursed awards to cover other claims. Because fees are priority claims, they note, the bankruptcy court would also have to order disgorgement from all of the priority creditors to whom $3.2 million has already been disbursed. They argue,

> Other than a mere remote "possibility," there is not a scintilla of evidence that would support any theory of disgorgement. While Mr. Gold complied with the bankruptcy judge's request that he personally guarantee payment of any disgorgement order, the fact remains that the possibility of disgorgement is extremely remote in this case.

The interim nature of the bankruptcy court's award, however, is more real and more complex than the appellants have allowed, as was recognized by the bankruptcy court itself. While it is true that neither Gold nor GM&L continues to serve and therefore earn fees, the bankruptcy proceeding itself continues. And although it is likely that additional funds will come into the estate, making it unlikely that the court will have to order the disgorgement of already authorized awards,

such an assessment does not make the fee awards of the August 9, 2002 order final. The awards are subject to reevaluation and therefore to either reduction or indeed enhancement. This lack of finality is manifested in several respects.

*First*, as to each award, the bankruptcy court characterized the award as "interim" in nature, meaning that it was subject to reevaluation.

*Second*, the awards, although authorized, were not to be paid in full but were subject to payment "upon further order of [the bankruptcy] court." Accordingly, portions of the awards to both Trustee Gold and GM&L have yet to be disbursed.

*Third*, the bankruptcy court recognized that *total* trustees' fees are capped by § 326(a) at a percentage of the total amounts distributed by the estate. Because Gold's fees must be calculated together with his successor's fees based on the total disbursements, Gold's fees could be reduced. As the bankruptcy court stated:

> The trustee has been allowed interim compensation as trustee and additional compensation will be allowed at this time. It cannot be determined at this time what additional trustee fees may be incurred to complete this case. *If the trustee's fees for the trustee and his successor are less than the maximum allowable by § 326(a), each trustee will be fully compensated. However, a problem may arise if the total trustees' fees exceed the allowable maximum.* If the trustee had continued to serve as trustee to the completion of this case and the total fees exceeded the maximum allowable by § 326(a), only he would have been affected. With the appointment of a successor trustee, the successor trustee's fees may be affected by the cap on trustee fees. In these circumstances, the fees awarded today are provisional only and may be adjusted at the conclusion of the case.

(Emphasis added). Thus, at this point, there is simply no way to know now what the total trustees' fees will be or what the § 326(a) cap will amount to. We agree with Collier's observation that "[o]nly after a case is closed (and the total disbursements or plan payments can be

determined) can the compensation payable be allocated to a particular trustee." 3 *Collier on Bankruptcy* ¶ 326.03[1][a] (Alan N. Resnick et al. eds., 15th ed. rev. 2004).

*Fourth*, the court recognized that legal fees and trustees' fees had become mixed together, so that some of the legal fees were for trustee's work and therefore would be subject to the cap imposed by § 326(a). As the bankruptcy court observed, the award to GM&L "include[d] those fees payable to [GM&L] that are attributable to the trustee and are included in the calculation of the maximum allowable fees under § 326(a)."

And *fifth*, independent from the effect of the § 326(a) cap on the trustees' fees, 11 U.S.C. § 330(a)(5) makes clear the provisional nature of the entirety of the funds actually disbursed both to Gold and to GM&L. Section 330(a)(5) provides for the return of excess disbursements to the estate in the event that the interim awards allowed under § 331 exceed the bankruptcy court's final awards. *See* 3 *Collier on Bankruptcy*, *supra*, ¶ 331.03[3].

For all of these reasons, the bankruptcy court summarized, "The interim fee applications of . . . the trustee's law firm and the trustee will be *provisionally* allowed as set forth above." (Emphasis added). And it is apparent that the court's fee awards were not just formally provisional — they actually depended on completion of the administration of the debtor's estate.

At oral argument, the appellants contended that the bankruptcy court's order was final because the bankruptcy judge "has made a final determination as to *methodology*, as to how to approach trustee commissions." This, however, misses the point because even though the bankruptcy court may have determined its methodology, the *amounts* of the fees to be awarded under the methodology would still be dependent on other factors that have yet to be finally determined. Indeed, it should not be forgotten that at the conclusion of the bankruptcy case and in light of the trustees' success, the bankruptcy court might well wish to provide bonuses to Gold and GM&L under the lodestar method. That the bankruptcy court remains free to act in this manner — to increase or decrease amounts previously awarded on an

interim and provisional basis — only underscores the nonfinal nature of its August 9, 2002 order.

### III

The appellants contend, alternatively, that we have jurisdiction under the "collateral order doctrine." Under the collateral order doctrine, interlocutory orders of the bankruptcy court are appealable if they "conclusively determine [a] disputed question, resolve an important issue completely separate from the merits of [an] action, and [are] effectively unreviewable on appeal from a final judgment." *Grundy Nat'l Bank v. Looney (In re Looney)*, 823 F.2d 788, 791 (4th Cir. 1987) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)) (internal quotation marks omitted). Given the provisional nature of the bankruptcy court's fee and expense awards and the bankruptcy court's complete freedom to alter the awards at any time up until the bankruptcy case closes, the August 9, 2002 order has not "conclusively determined" anything. In addition, both Gold and GM&L remain free at the conclusion of CLC's Chapter 7 proceeding to appeal their *final* awards to the district court.

### IV

For the reasons given, we conclude that the bankruptcy court's August 9, 2002 order was not a final order under 28 U.S.C. § 158(a) and that therefore the district court did not have jurisdiction to review it. We also conclude, for the same reason, that the district court's January 31, 2003 order was not a final order in this bankruptcy case and that therefore we lack subject matter jurisdiction to review it now on appeal. *See* 28 U.S.C. § 158(d). Accordingly, we dismiss this appeal and remand the case to the district court with instructions to vacate its January 31, 2003 order for lack of jurisdiction.

*DISMISSED AND REMANDED*
*WITH INSTRUCTIONS*