**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1981**

_____

In re:  BESTWALL, LLC,

              Debtor.

------------------------------

PATRICIA BLAIR, as personal representative for the Estate of Lee Blair; VIOLET BUTLER, as personal representative for the Estate of Ralph Butler; BETTY JEAN CAMILLERI, as personal representative for the Estate of Terrence Camilleri; CHERYL D. WOOTER, as personal representative for the Estate of William Cutler; KIMBERLY PLANT, as special administrator of the Estate of Sheryl Evans; MARIA FONS, as personal representative for the Estate of Miguel Fons; JOHN GUZMAN, as personal representative of the Estate of Joe Guzman; CHRISTOPHER NELSON, as personal representative for the Estate of Roger Nelson; MELISSA TAYLOR, as personal representative for the Estate of Donald Taylor; THE LAW FIRM OF MAUNE, RAICHLE, HARTLEY, FRENCH & MUDD, LLC,

              Claimants – Appellants,

        v.

BESTWALL, LLC,

              Debtor – Appellee.

_____

**No. 22-1984**

_____

In re:  BESTWALL, LLC,

              Debtor.

---------------------------

PATRICIA BLAIR, as personal representative for the Estate of Lee Blair; VIOLET BUTLER, as personal representative for the Estate of Ralph Butler; BETTY JEAN CAMILLERI, as personal representative for the Estate of Terrence Camilleri; CHERYL D. WOOTER, as personal representative for the Estate of William Cutler; KIMBERLY PLANT, as special administrator of the Estate of Sheryl Evans; MARIA FONS, as personal representative for the Estate of Miguel Fons; JOHN GUZMAN, as personal representative of the Estate of Joe Guzman; CHRISTOPHER NELSON, as personal representative for the Estate of Roger Nelson; MELISSA TAYLOR, as personal representative for the Estate of Donald Taylor; THE LAW FIRM OF MAUNE, RAICHLE, HARTLEY, FRENCH & MUDD, LLC,

                    Claimants – Appellants,

        v.

BESTWALL, LLC,

                    Debtor – Appellee.

_____

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., Senior District Judge.  (3:21-cv-00503-RJC; 3:21-cv-00510-RJC)

_____

Argued:  September 22, 2023                         Decided:  April 29, 2024

_____

Before WILKINSON, KING, and RUSHING, Circuit Judges.

_____

Affirmed by published opinion.  Judge Rushing wrote the majority opinion, in which Judge Wilkinson joined.  Judge King wrote a dissenting opinion.

_____

**ARGUED:**  Natalia Lynn Talbot, WALDREP WALL BABCOCK & BAILEY PLLC, Winston-Salem, North Carolina, for Appellants. C. Kevin Marshall, JONES DAY, Washington, D.C., for Appellee. **ON BRIEF:**  Thomas W. Waldrep, Jr., Jennifer B. Lyday, Ciara L. Rogers, Diana Johnson, WALDREP WALL BABCOCK & BAILEY PLLC, Winston-Salem, North Carolina, for Appellants.  Gregory M. Gordon, Dallas, Texas, Megan Lacy Owen, JONES DAY, Washington, D.C.; Garland S. Cassada, Richard C. Worf, Jr., Charlotte, North Carolina, Preetha Suresh Rini, ROBINSON, BRADSHAW & HINSON, P.A., for Chapel Hill, North Carolina, for Appellee.

2

RUSHING, Circuit Judge:

A party to litigation may not immediately appeal a civil contempt order. Instead, the sanctioned party must wait until final judgment to appeal. In bankruptcy, the same rule applies, except the relevant final judgment may be a decree ending the entire case or a decree ending a discrete proceeding within the bankruptcy case.

In the two orders underlying these appeals, the bankruptcy court held Appellants in contempt and sanctioned them for defying a discovery order. Because the contempt and sanctions orders do not terminate a procedural unit separate from the remaining bankruptcy case, they are not final appealable orders. We therefore affirm the district court's judgment dismissing the appeals for lack of jurisdiction.

I.

Bestwall, LLC filed for Chapter 11 bankruptcy in November 2017 in the United States Bankruptcy Court for the Western District of North Carolina. To resolve current and future asbestos-related claims against it, Bestwall sought to develop a reorganization plan establishing a trust to pay those claims under 11 U.S.C. § 524(g). The parties in the bankruptcy case have been unable to agree to the terms of a reorganization plan. One of the chief points of contention is the extent of Bestwall's current and future asbestos-related liabilities, which will inform the trust funding amount. Bestwall has sought discovery in aid of estimating those liabilities.

In 2020, Bestwall moved to require all persons with pending mesothelioma claims against it to complete a personal injury questionnaire providing information about their claims. Various individual claimants objected to the request, as did the Official Committee

3

of Asbestos Claimants, whose duty is to represent the interests of current asbestos claimants in the bankruptcy case. After a hearing, the bankruptcy court found the proposed questionnaire "relevant to estimation of the asbestos liability of the Debtor and the negotiation, formulation, and confirmation of a section 524(g) plan of reorganization that will be accepted by at least 75% of current asbestos claimants who vote on the plan." J.A. 789. The court therefore granted Bestwall's motion and ordered all current mesothelioma claimants to complete the questionnaire ("PIQ Order"). In its order, the court "retain[ed] exclusive jurisdiction to interpret, apply, and enforce th[e] [o]rder," and instructed "[a]ny person who [sought] relief from any provision of th[e] [o]rder" to do so by motion in the bankruptcy court. J.A. 800.

The Committee and several individual claimants attempted to appeal the PIQ Order to the district court. That court dismissed the appeal for lack of jurisdiction, reasoning that the PIQ Order was not a final appealable order and the issue did not warrant leave of court for interlocutory review. *See* 28 U.S.C. § 158(a)(1), (3). The Committee also sought a stay of the PIQ Order in the bankruptcy court, which was denied.

Undeterred, certain claimants subject to the PIQ Order sued Bestwall in federal district court in Illinois seeking an injunction to prevent it from enforcing the PIQ Order. The complaint was signed by counsel from the law firm of Maune, Raichle, Hartley, French & Mudd, LLC, which serves as counsel to a Committee member and other individual claimants in the bankruptcy case, as well as special counsel to the Committee concerning medical science matters related to the estimation hearing. In response, Bestwall moved in the bankruptcy court to enforce the PIQ Order.

4

The bankruptcy court granted the motion, held a hearing, and found nearly all the Illinois plaintiffs, along with Maune Raichle, in contempt for violating the PIQ Order. However, the court declined to impose sanctions, preferring to offer the parties an opportunity to purge their contempt by dismissing the Illinois suit. Most of the Illinois plaintiffs, still represented by Maune Raichle, nevertheless continued to prosecute the Illinois lawsuit, which the district court for the Southern District of Illinois ultimately dismissed for lack of jurisdiction. The bankruptcy court subsequently held a hearing and sanctioned those Illinois plaintiffs and Maune Raichle jointly and severally in the amount of $402,817.70 for fees and expenses Bestwall incurred in defending the Illinois lawsuit and enforcing the PIQ Order.

The Illinois plaintiffs and Maune Raichle—Appellants here—appealed both the contempt order and the sanctions order to the district court. That court concluded that neither order was final and dismissed the appeals for lack of jurisdiction. *See* 28 U.S.C. § 158(a)(1). Appellants sought review in this Court pursuant to 28 U.S.C. § 158(d)(1).

## II.

Considering the question de novo, we agree with the district court that the contempt and sanctions orders are nonfinal, interlocutory decisions. The district court therefore properly dismissed both appeals for lack of jurisdiction.

We begin with principles that no party disputes. In normal civil litigation, a party to continuing proceedings "may not immediately appeal a civil-contempt order" or attendant sanctions but must await final judgment to appeal. *United States v. Myers*, 593 F.3d 338, 344 (4th Cir. 2010) (citing *Fox v. Capital Co.*, 299 U.S. 105, 107 (1936)); *see*

5

*also Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975)

("[A] party to a suit may not review upon appeal an order fining . . . him for civil contempt

except in connection with appeal from a final judgment in the main action." (internal

quotation marks omitted)); 15B Charles Alan Wright & Arthur R. Miller, Federal Practice

& Procedure § 3917 (2d ed., Apr. 2023 update) (calling this rule "well entrenched").  This

rule applies to Appellants, who are current claimants against Bestwall in the ongoing

bankruptcy case and counsel that is jointly and severally liable with claimants for the

contempt sanctions.  *See* 11 U.S.C. § 1109(b) (identifying a "creditor" as a "party in

interest"); *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1425 (9th Cir. 1985)

("Where, as here, the sanctions are imposed against both client and counsel, jointly, there

is such a congruence of interest that the attorneys must await final judgment in order to

appeal." (internal quotation marks omitted)); *Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d

165, 167–168 (7th Cir. 1997) (same).[1]

Bestwall's bankruptcy case is ongoing.  No final decree ending the case has been

rendered.  In normal civil litigation, that would typically end the inquiry and an appellate

---

[1] Although no party disputes these principles, our colleague in dissent does.  The dissent argues that Maune Raichle is entitled to immediately appeal, but none of the cases cited by the dissent address a situation where, as here, parties to the ongoing litigation are held jointly and severally liable with their counsel for contempt sanctions.  *See* Dissenting Op. 16.  We do not disagree with the dissent that contempt sanctions solely against a nonparty are immediately appealable, as are criminal contempt sanctions and contempt sanctions after a final decree.  *See* Dissenting Op. 18 (citing *Lamb v. Cramer*, 285 U.S. 217 (1932); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373 (1985); and 15B Federal Practice & Procedure § 3917).  But none of those circumstances is present here.

6

court would dismiss the appeals for lack of jurisdiction.  *See* 28 U.S.C. § 1291; *Myers*, 593 F.3d at 348 (dismissing for lack of appellate jurisdiction).

But the statute governing bankruptcy appeals authorizes appeals from final judgments, orders, and decrees entered in bankruptcy "cases *and proceedings*."  28 U.S.C. § 158(a) (emphasis added).  "[T]o be appealable, the challenged bankruptcy decision does not have to end the entire bankruptcy case; it just has to end a proceeding inside the case."  *Kiviti v. Bhatt*, 80 F.4th 520, 529 (4th Cir. 2023).  As the Supreme Court has explained, a "bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor."  *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501 (2015) (quoting 1 Collier on Bankruptcy ¶ 5.08[1][b], p. 5–42 (16th ed. 2014)).  Accordingly, "Congress made orders in bankruptcy cases immediately appealable if they finally dispose of discrete disputes within the larger bankruptcy case."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020) (internal quotation marks, brackets, and ellipses omitted); *see also In re Comput. Learning Ctrs., Inc.*, 407 F.3d 656, 660 (4th Cir. 2005); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986).

For example, an adversary proceeding is a separate "proceeding" for purposes of bankruptcy finality.  *Kiviti*, 80 F.4th at 529.  An adversary proceeding resembles a "stand-alone lawsuit[] brought inside the bankruptcy," with its "own complaint, filing fee, motions, subset of parties, docket number[], and judgment."  *Id.* (internal quotation marks omitted).  The relevant procedural unit is the entire adversary proceeding, not one of the many decisions made within it; "an order only partially ending the adversary proceeding is

7

not [final and appealable]." *Id.* Similarly, an order denying Chapter 13 plan confirmation is not immediately appealable because the relevant proceeding in that context is the "entire process" of "attempting to arrive at an approved plan that would allow the bankruptcy to move forward." *Bullard*, 575 U.S. at 502. That process "terminates only when a plan is confirmed or—if the debtor fails to offer any confirmable plan—when the case is dismissed." *Id.* And as a final example, adjudication of a creditor's motion for relief from the automatic stay is "a discrete procedural unit" within the bankruptcy case that is "anterior to, and separate from, claim-resolution proceedings" and "yields a final, appealable order when the bankruptcy court unreservedly grants or denies relief." *Ritzen Grp.*, 140 S. Ct. at 586, 589.

Appellants contend that the contempt and sanctions orders were final decisions in a discrete "proceeding" within Bestwall's bankruptcy case and therefore the district court erred by dismissing their appeals for lack of jurisdiction.[2] *See* 28 U.S.C. § 158(a)(1). We disagree.

The contempt and sanctions orders did not "terminate[] a procedural unit separate from the remaining [bankruptcy] case," nor did they follow any ruling that did so. *Ritzen Grp.*, 140 S. Ct. at 591. The bankruptcy court imposed sanctions on Appellants to compensate Bestwall for Appellants' contempt of the PIQ Order. The PIQ Order, which required Appellants to submit discovery in aid of estimating Bestwall's asbestos liability,

---

[2] District courts also may review certain interlocutory orders and grant leave to review "other interlocutory orders and decrees." 28 U.S.C. § 158(a)(2), (3). Neither of those bases for the district court's appellate jurisdiction is at issue here.

8

was issued pursuant to Federal Rule of Bankruptcy Procedure 2004—the "basic discovery device in bankruptcy cases." 9 Collier on Bankruptcy ¶ 2004.01[1]. As a general rule, discovery orders aren't final and appealable; they are part of resolving a larger dispute. *See In re Bryson*, 406 F.3d 284, 288 (4th Cir. 2005) (describing a "'discovery ruling'" as a "'clearly interlocutory decision'" (quoting *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991))); *In re Coleman Craten, LLC*, 15 Fed. App. 184, 184 (4th Cir. 2001) (per curiam) (affirming dismissal of appeal from Rule 2004 order as interlocutory); *In re Royce Homes LP*, 466 B.R. 81, 89 (S.D. Tex. 2012) (noting "extensive case law holding bankruptcy discovery orders to be interlocutory"). Likewise, the PIQ Order is a step toward gathering the information necessary to estimate Bestwall's asbestos liability. That discovery order did not "finally dispose of [a] discrete dispute[]" within the bankruptcy case. *Ritzen Grp.*, 140 S. Ct. at 587 (internal quotation marks omitted). And enforcement of that discovery order through contempt similarly did not "terminate[] a procedural unit separate from the remaining case." *Id.* at 591; *cf. In re Teknek, LLC*, 512 F.3d 342, 344–345 (7th Cir. 2007) (reasoning that "an order holding a party in civil contempt" for withholding information during a Rule 2004 examination is not an appealable final decision).

Appellants say the bankruptcy court's orders "resolved discrete disputes regarding" whether Appellants "violated the PIQ Order by filing the Illinois Lawsuit" and "whether sanctions were warranted, and if so, the amount thereof." Opening Br. 17. But that "define[s] the pertinent proceeding so narrowly that the requirement of finality would do little work as a meaningful constraint on the availability of appellate review." *Bullard*, 575

9

U.S. at 504. If we accepted Appellants' formulation of finality, every ruling to enforce a discovery order—and, likely, every discovery order itself—would be an appealable final decision supposedly terminating a bankruptcy "proceeding." *See Ritzen Grp.*, 140 S. Ct. at 591 ("[T]he issue of appealability should be determined for the entire category to which a claim belongs." (internal quotation marks omitted)). That characterization conflicts with reality. Imagine the district court reviewed the contempt and sanctions orders—even the PIQ Order itself—and ruled in Appellants' favor. Bestwall could then attempt to gather the same information for its estimation proceeding by means of a different discovery tool. And if Appellants refused to comply with *that* discovery order and were sanctioned for contempt, they could appeal again. Far from ending the parties' dispute, "each climb up the appellate ladder and slide down the chute" would only prolong resolution of the underlying matter for which the information is being sought in the first place. *Bullard*, 575 U.S. at 504. Such a result is at odds with the reason for a rule of finality. *See id.* It also reveals that the relevant dispute for finality purposes is larger than the contempt and sanctions orders themselves.

Appellants rely on *In re Stasz*, 387 B.R. 271 (B.A.P. 9th Cir. 2008), in which a bankruptcy appellate panel held that Rule 2004 contempt and sanctions orders were final and appealable. *Id.* at 272. We do not find *Stasz* persuasive.

First, it is in tension with subsequent Supreme Court caselaw. The *Stasz* panel primarily reasoned that, because a motion for contempt is a "contested matter" under the Federal Rules of Bankruptcy Procedure, an order resolving the motion "has the status of a judgment" and therefore must be a final appealable order. *Id.* at 275; *see also* Fed. R.

10

Bankr. P. 9014, 9020. *Bullard*, however, expressly refuted that logic. 575 U.S. at 505. As the Supreme Court explained, "the list of contested matters is endless and covers all sorts of minor disagreements" that the "concept of finality cannot stretch to cover." *Id.* (internal quotation marks omitted).

Second, the *Stasz* panel applied a capacious finality standard different from that used in "an adversary proceeding or a civil action outside bankruptcy" because it worried that the sanctions order otherwise could never be appealed, since "the culmination of the bankruptcy case does not result in a final judgment." 387 B.R. at 276. But review is not as elusive as the panel believed. As discussed, a party can appeal from a final order in the relevant "proceeding" or case. 28 U.S.C. § 158(a)(1). And several mechanisms for interlocutory review exist to resolve questions "important enough that [they] should be addressed immediately." *Bullard*, 575 U.S. at 508. These include seeking leave for interlocutory review in the district court under 28 U.S.C. § 158(a)(3), requesting certification to the court of appeals under 28 U.S.C. § 1292(b), and obtaining certification to a court of appeals under 28 U.S.C. § 158(d)(2). *See Bullard*, 575 U.S. at 508–509.

Finally, Appellants cite decisions in which other bankruptcy appellate panels have concluded that contempt and sanctions orders imposed for violation of certain orders resolving core proceedings were appealable. *See In re Fatsis*, 405 B.R. 1, 5–6 (B.A.P. 1st Cir. 2009) (contempt and sanctions orders imposed for violating plan confirmation order); *In re Webb*, 472 B.R. 665 (B.A.P. 6th Cir. 2012) (unpublished) (same for violating automatic stay); *In re Nelson*, No. BAP WW-15-1416, 2016 WL 7321196, at *1 (B.A.P. 9th Cir. Dec. 15, 2016) (same for violating discharge injunction); *cf.* 28 U.S.C. § 157(b)(2)

11

(illustrative list of core proceedings). Whether those contempt sanctions followed a final judgment, order, or decree in a "proceeding" presents a different question from the one raised here, regarding sanctions for violating a discovery order in a continuing bankruptcy case. *See*, *e.g.*, *Bullard*, 575 U.S. at 502 (confirmation of a Chapter 13 plan terminates a "proceeding" for purposes of appellate review). We therefore find those decisions inapposite.

## III.

In sum, Appellants have not appealed from a final decision in a bankruptcy "case" or "proceeding." The civil contempt and sanctions orders entered against them for violating a discovery order are interlocutory and cannot be immediately appealed as of right. The district court therefore correctly dismissed these appeals for lack of jurisdiction.

*AFFIRMED*

KING, Circuit Judge, dissenting:

The issue in these appeals is whether the district court in North Carolina possessed appellate jurisdiction under § 158(a) of Title 28 to review a final contempt order of a North Carolina bankruptcy judge that has severely sanctioned practicing Illinois attorneys and their clients as contemnors. To my chagrin, my fellow panelists have ruled that the district court lacks jurisdiction to review those contempt and sanctions orders. I disagree, however, and explain herein.

## A.

It is important to first identify the court orders at issue. In March 2021, a bankruptcy judge in the Western District of North Carolina entered a discovery order on behalf of the debtor in the proceedings, Bestwall, LLC, to obtain information that Bestwall wanted to use in connection with personal injury claims initiated against its parent, Georgia-Pacific, LLC, by mesothelioma asbestos plaintiffs in thousands of asbestos cases around the United States.[1] A few months later, in June 2021, several of the mesothelioma plaintiffs with personal injury lawsuits already pending in Illinois state court (the "Illinois Claimants") filed a separate civil action in the Southern District of Illinois, seeking injunctive relief against the North Carolina bankruptcy judge's discovery order. In response, Bestwall requested the North Carolina bankruptcy judge to enter an order ruling that the Illinois Claimants and their lawyers had violated the discovery order by suing in Illinois and

---

[1] Bestwall is a corporate subsidiary of Georgia-Pacific, LLC. The relationship between Bestwall and Georgia-Pacific, along with how Georgia-Pacific has shifted its liability for an untold number of asbestos related claims onto Bestwall, are discussed in our 2023 decision in *In re Bestwall LLC*, 71 F.4th 168 (4th Cir. 2023).

13

directing them to "show cause why they should not be held in contempt." *See* J.A. 1049. The bankruptcy judge granted the motion, and it then scheduled a show cause hearing on the contempt issue.

After conducting the show cause hearing, the bankruptcy judge ruled that the Illinois Claimants and their lawyers — the law firm of Maune, Raichle, Hartley, French & Mudd, LLC ("Maune Raichle") — were in contempt of the bankruptcy judge's discovery order and entered an order to that effect on August 18, 2021 (the "Contempt Order"). *See* J.A. 1373. The Contempt Order recited that the Illinois lawsuit violated the bankruptcy judges's discovery order and ruled that the Illinois Claimants and their lawyers at Maune Raichle were subject to contempt citations under the court's inherent power "to enforce its own orders." *Id.* at 1371-73.

The Illinois Claimants and Maune Raichle were then given an opportunity to purge their contempt by dismissing the Illinois lawsuit. They declined to dismiss, however, and persisted in asserting that they were legally entitled to challenge the discovery order in Illinois, maintaining that the discovery order was fatally flawed, legally and constitutionally. The question of possible contempt sanctions against the Illinois Claimants and Maune Raichle was left by the bankruptcy judge for a later day.

On September 23, 2021, after conducting another hearing, the bankruptcy judge ruled that the contempt had not been purged and held the Illinois Claimants and Maune Raichle jointly and severally liable for sanctions, which were assessed in the sum of

14

approximately $402,000 (the "Sanctions Order"). *See* J.A. 1525.[2]  The Illinois Claimants and Maune Raichle then appealed the Contempt Order and the Sanctions Order (collectively, the "Contempt and Sanctions Orders") to the district court in the Western District of North Carolina.[3]  That court dismissed both appeals for lack of appellate jurisdiction. *See* J.A. 3055, 3062.  Notices of appeal from the dismissals were timely filed and these appeals followed.

B.

As detailed above, neither of these appeals are from the North Carolina discovery order — both these appeals are from the Contempt and Sanctions Orders.  As recognized by the Supreme Court, and by our Court as well, a nonparty is generally entitled to appeal a final contempt order, before the conclusion of related litigation.  *See United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("The

---

[2] The bankruptcy judge calculated the sanctions amount by aggregating the fees and expenses detailed by Bestwall's counsel, which included the law firms of Jones Day, Robinson Bradshaw & Hinson, P.A., and King & Spalding LLP, along with an economic consulting firm called Bates White, LLC.  The bankruptcy judge reduced the law firms' proposed fees to some extent, due to expense and time entries that were ambiguous or duplicative.

[3] In their appeals to the district court, the Illinois Claimants and Maune Raichle presented more than fifteen assertions of error, including claims related to personal jurisdiction; the service, notice, and applicability of the discovery order; due process; and other issues involving the propriety of their Illinois lawsuit.  *See* J.A. 45-46.  The merits of these assertions were never addressed or resolved by the district court.

right of a nonparty to appeal an adjudication of contempt cannot be questioned."); *In re Under Seal*, 749 F.3d 276, 284-85 (4th Cir. 2014).[4]

The practicing lawyers and law firms representing thousands of personal injury plaintiffs — like Maune Raichle — are not parties in Bestwall's bankruptcy proceedings. Their clients' injury claims have been stayed by the Bestwall bankruptcy, however, and effectively moved from Illinois state courts to a North Carolina bankruptcy judge. And the lawyers and their firms remain nonparties, even after being deemed contemnors. *See Trade Well International v. United Central Bank*, 778 F.3d 620, 625 (7th Cir. 2015) (ruling that attorney for plaintiff is nonparty to litigation); *In re Murphy*, 560 F.2d 326, 332 n.10 (8th Cir. 1977) ("Here, the contemnors are not parties in the underlying action and the orders of contempt are appealable. We do not accept the argument that the relationship between the law firms and the parties somehow transformed the firms into de facto parties"). Consistent with the foregoing, Maune Raichle is entitled to appeal the Contempt and Sanctions Orders, and the district court erred in ruling otherwise.

## C.

I recognize, of course, that these appeals are not governed by the rules that most lawyers generally deal with. Indeed, these appeals are from contempt proceedings before a bankruptcy judge and implicate the provisions of 28 U.S.C. § 158(a). Importantly,

---

[4] It seems settled that a contempt order is not final if the question of sanctions is postponed. *See United Airlines, Inc. v. U.S. Bank N.A.*, 406 F.3d 918, 923 (7th Cir. 2005); *Matter of United States Abatement Corp.*, 39 F.3d 563, 567 (5th Cir. 1994); *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992). Here, the Contempt and Sanctions Orders are final. The sanctions have been assessed and are being challenged in this appeal.

however, § 158(a) is even more generous with respect to appellate review than the generally applicable final judgment rule codified in 28 U.S.C. § 1291. Section 158(a) provides, in relevant part, as follows:

> The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases *and proceedings*.

*See* 28 U.S.C. § 158(a) (emphasis added). The Supreme Court has ruled, pursuant to § 158(a), that "Congress made orders in bankruptcy cases immediately appealable if they finally dispose of discrete disputes within the larger bankruptcy case." *See Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 39 (2020) (cleaned up). That controlling decision from our highest Court pairs with our recognition that "[t]he concept of finality in bankruptcy cases has traditionally been applied in a more pragmatic and less technical way." *See In re Computer Learning Centers, Inc.*, 407 F.3d 656, 660 (4th Cir. 2005) (internal quotation marks omitted).

My friends in the majority resist the applicable breadth and coverage of § 158(a), asserting that the Contempt and Sanctions Orders "did not terminate a procedural unit separate from the remaining bankruptcy case." *See supra* at 8 (internal quotations marks omitted). The Contempt and Sanctions Orders, however, finally disposed of the bankruptcy judge's contempt proceedings against the Illinois Claimants and Maune Raichle, which arose from a very discrete and precise dispute in the Bestwall bankruptcy. The Contempt and Sanctions Orders are therefore appealable under § 158(a).

I will explain that straightforward position. When Bestwall moved to enforce the discovery order while simultaneously requesting a contempt hearing, a discrete procedural

17

sequence commenced. The sole purpose of the contempt proceedings was to assess whether the Illinois Claimants and the lawyers at Maune Raichle were contemnors. There were then at least two hearings conducted by a North Carolina bankruptcy judge in the contempt proceedings, involving the very same subset of parties and nonparties. And those hearings resulted in the Contempt and Sanctions Orders, which "alter[ed] the status quo and fixe[d] the rights and obligations" stemming therefrom. *See Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015). It is therefore clear on this record that the proceedings that resulted in the Contempt and Sanctions Orders were a discrete dispute process resolved within the vast Bestwall bankruptcy case.

I am not alone in this view. The Supreme Court is my primary ally because it has recognized that contempt proceedings have a life of their own, independent of the underlying lawsuit where they arose. *See Lamb v. Cramer*, 285 U.S. 217, 221 (1932) (ruling by Supreme Court that contempt decree is appealable because it "finally adjudicated the rights asserted by it"); *see also Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 378 (1985); 15B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3917 (2d ed.) (explaining — consistent with Supreme Court precedent — that "contempt proceedings against a nonparty are intrinsically separate" from the underlying litigation). And the intrinsically separate nature of contempt proceedings has not been ignored in the context of § 158(a). *See In re Stasz*, 387 B.R. 271 (B.A.P. 9th Cir. 2008) (ruling in bankruptcy case that final contempt order was immediately appealable under § 158(a), because it was "a final order that ended the particular contested matter," and if such an order were not appealable, "it is unclear when the order would become final

18

and appealable [because] . . . the culmination of the bankruptcy case does not result in a final judgment."); *see also In re Nelson*, 2016 WL 7321196 (B.A.P. 9th Cir. 2016).

D.

Finally, I will respond briefly to the majority's invocation of finality concerns — *see supra* at 9-10. Although finality is a lofty goal, a pragmatic approach to the issue of finality is always "essential to the achievement of the just, speedy, and inexpensive determination of every action: the touchstones of federal procedure." *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962) (internal quotation marks omitted). We therefore should not champion finality to the detriment of the practical and sweeping consequences imposed by the Contempt and Sanctions Orders. And the inability of practicing lawyers to appeal the Contempt and Sanctions Orders will have serious ramifications, which will be starkly exacerbated by the protracted nature of bankruptcy proceedings.

This situation is a perfect example. In 2017, Bestwall initiated these bankruptcy proceedings in the Western District of North Carolina. The scale and importance of Bestwall's bankruptcy have resulted in substantial delays — seven years already — which will continue. If the Illinois Claimants and Maune Raichle cannot appeal now, they will be branded as contemnors for the indefinite future, and they will carry with them at least $402,000 of sanctions for contempt of court, plus interest. And if these Contempt and Sanctions Orders hold up, the Illinois Claimants may pursue an untold number of malpractice claims against their own lawyers to avoid this newfound financial liability.

Aside from potential litigation issues, the Contempt and Sanctions Orders will impact the law firm's reputation and the potential careers of its several lawyers. Any

19

lawyer representing and serving the Illinois Claimants risks additional sanctions by ethics committees, and also by courts that issue law licenses. Indeed, in Illinois — and in most other jurisdictions — lawyers held in contempt of court are on a tragic path towards grievous professional consequences, including disbarment. *See In re Weston*, 442 N.E.2d 236, 240 (Ill. 1982); *see also Matter of Jafree*, 741 F.2d 133, 136 (7th Cir. 1984) (recognizing that "disbarment was one of three sanctions imposed on the [attorney] for his contempt"). I emphasize that other ethical considerations are at play, including that all lawyers have the unrelenting responsibility to "zealously assert" the rights of their clients. *See* MODEL RULES OF PRO. CONDUCT PREAMBLE (AM. BAR ASS'N 1983). That responsibility could well encompass the pursuit by Maune Raichle of the Illinois lawsuit on behalf of their clients, the Illinois Claimants. And the situation they faced may have been more appropriate for a contested court proceeding in Illinois rather than for contempt proceedings in a North Carolina bankruptcy court.

Multiple additional hardships will result. These Contempt and Sanctions Orders will severely strain attorney-client relationships. Maune Raichle — as would any law firm in its position — will probably face ethical dilemmas. For example, settlement offers could well include proposals regarding contempt sanctions that Maune Raichle sees as favorable. But its clients, the Illinois Claimants — comprised mostly of representatives of estates of deceased American citizens impacted by Georgia-Pacific's asbestos-laden products — will not view any such offers with favor.

The foregoing recitation demands, in my view, that the lawyers at Maune Raichle be treated better, and that they and the Illinois Claimants be accorded a prompt appellate

20

review of the propriety of the Contempt and Sanctions Orders.  Our failure to accord them

that appeal is misguided and unjustified.

     For the foregoing reasons, I respectfully dissent.